Earl A. and Carolyn J. PIKE, Petitioners, Appellants,

v.

John GUNYOU, Commissioner of Finance of the State of Minnesota, et al., Petitioners, Respondents,

and

Metropolitan Airports Commission, a public body of the State of Minnesota, Respondent,

and

Northwest Airlines, Inc., Intervening Defendant, Respondent.

No. C2–92–734.

Supreme Court of Minnesota.

Nov. 13, 1992.

---

David R. Knodell, Minneapolis, for appellants.

Mark B. Levinger, Christie B. Eller, St. Paul, for John Gunyou, et al.

Donald W. Selzer, Jr., St. Paul, for Metropolitan Airports Com'n.

Thomas W. Tinkham, Warren R. Spannaus, Leslie J. Anderson, Dorsey & Whitney, Minneapolis, for Northwest Airlines, Inc.

Robert C. Maki, Duluth, for City of Duluth, amicus curiae.

KEITH, Chief Justice.

We entertained review of a decision of the court of appeals because it became immediately apparent to this court in the exercise of its supervisory authority that the appellate court's opinion far exceeded the bounds of appropriate appellate re-

view.[1] We therefore vacate the majority and concurring opinions of the court of appeals, 488 N.W.2d 298, and direct that those opinions shall have neither dispositional nor precedential value. Accordingly, we confine our review to scrutiny of the decision of the trial court dismissing the plaintiffs' action with prejudice for failure to file the requisite surety bond in accordance with Minn.Stat. § 562.02 (1990). Opinion and concurrence of the court of appeals vacated and declared to be of neither dispositional nor precedential value; judgment of dismissal with prejudice entered in the trial court affirmed.

■ In its 1991 session, the Minnesota legislature authorized the Commissioner of Finance to issue public bonds in an aggregate amount not exceeding $350 million to finance two publicly-owned air navigation facilities, a heavy maintenance facility for aircraft to be based at Duluth International Airport and an aircraft engine repair facility at the Chisholm–Hibbing Municipal Airport. 1991 Minn.Laws ch. 350, art. 1.[2] That legislation provided for the leasing of these facilities to an airline, and further authorized the Metropolitan Airports Commission to issue up to $390 million in bonds to facilitate the acquisition of real and personal property located in the metropolitan area and to lease that property to an airline. 1991 Minn.Laws ch. 350, art. 2, § 3.[3]

The proposal was the subject of considerable governmental and public scrutiny both during the legislative session and a lengthy negotiation process which followed. For our purposes, it is sufficient to note that, in accordance with the financing deadline of March 31, 1992 imposed by operation of 1991 Minn.Laws ch. 350, art. 1, § 27 and art. 2, § 7, the various authorized officials of the state, the Airports Commission, and Northwest Airlines, Inc., entered into a series of agreements dated March 29, 1992 designed to bring this comprehensive financing arrangement to fruition.

Plaintiffs Earl A. Pike and Carolyn J. Pike commenced this action on April 2, 1992 seeking a judicial declaration of the unconstitutionality of 1991 Minn.Laws ch. 350 and of the failure of the state and Airports Commission officials to comply with specified provisions of the Act. They sought a permanent injunction restraining the officials from issuing any bonds authorized by chapter 350 and otherwise limiting action[4] in accordance with the Act.

On April 3, 1992, the defendants State of Minnesota and its named officials and the Airports Commission served and filed a motion in the district court pursuant to Minn.Stat. §§ 473.675, 562.02 (1990) for an order requiring the plaintiffs to post a surety bond in the amount of $819 million. After hearing on April 10, 1992, the district court directed the plaintiffs to post a $30 million surety bond not later than April 14, 1992, the date on which the underwriters were to purchase the bonds, or the action would be dismissed with prejudice. Minn. Stat. § 562.02.[5] The trial court denied the

---

1. The majority of the court of appeals' panel greatly expanded its inquiry on appeal beyond the narrow issues raised with regard to the applicability of Minn.Stat. § 562.02 (1990) to this controversy and the exercise of the trial court's discretion in requiring the plaintiffs to file a surety bond. By addressing matters unrelated to those issues and by considering matters unrelated to its appellate task of reviewing the exercise of the trial court's discretion, the majority has inappropriately injected uncertainty as to the finality of its ultimate disposition affirming the dismissal of the plaintiffs' action with prejudice.

2. See Minn.Stat. §§ 116R.01–.16 (Supp.1991).

3. See Minn.Stat. § 473.667(11)(c) (Supp.1991).

4. More specifically, plaintiffs sought to permanently enjoin the Finance Commissioner and

Airports Commission from spending bond proceeds for any purpose other than principal repayment or from using tax revenues for payment of either principal or interest due on any chapter 350 bonds; to permanently enjoin the Revenue Commissioner from allowing any income tax credit or sales and use tax exemption authorized by chapter 350; and to permanently enjoin the Airports Commission from lending specified funds to Northwest Airlines.

5. The district court relied solely upon Minn. Stat. § 562.02, and our decision focuses therefore on the propriety of that ruling without reference to section 473.675. Minn.Stat. § 562.02 (1990) provides as follows:

Whenever any action at law or in equity is brought in any court in this state questioning directly or indirectly the existence of any condition or thing precedent to, or the validity of

plaintiffs' request for reconsideration, and when the bond was not timely filed, the action was dismissed with prejudice.

Our review of the district court's imposition of a surety bond requirement focuses first on the applicability of Minn.Stat. § 562.02 to these proceedings. Plaintiffs argue that, in those limited instances where a section 562.02 surety bond has either been requested or imposed, only procedural or administrative irregularities have been asserted by the challenging parties and that, accordingly, the section is inapplicable to actions asserting the unconstitutionality of specified legislation. We find neither precedential authority nor logic to support such a proffered narrow interpretation of the broad language of section 562.02.

In *Gram v. Village of Shoreview*, 259 Minn. 145, 154, 106 N.W.2d 553, 559 (1960), we upheld the constitutionality of section 562.02, a statute we determined was designed to protect taxpayers from delays in the implementation of public projects by encouraging those asserting challenges "to commence their actions before any substantial damage will result from a delay in the prosecution of the project." In *Gram*, we identified no exceptions to an application of the statute which neither requires a public body to seek a surety bond nor requires the trial court to order the filing of a bond and instead vests in each considerable discretion. *Id.* at 153–54, 106 N.W.2d at 559.

In light of the public protection purpose of the statute, we find no discernable difference between an administrative or procedural challenge, on the one hand, and a constitutional challenge, on the other hand, in terms of either's potential for "loss or damage to the public or taxpayers" occasioned by delays inherent in maintaining an action. Accordingly, we hold that the broad language of section 562.02 contemplated the statute's applicability to the constitutional challenge asserted in this action.

As we have indicated, the statute clearly commits to the broad discretion of the trial court the determination of the necessity of a surety bond to protect the public interest, the amount of the bond and the "reasonable time" allowed for the filing of the bond. Minn.Stat. § 562.02. We have upheld those surety bond requirements absent a clear abuse of the trial court's discretion. *See The Kilowatt Organization (TKO), Inc. v. Department of Energy, Planning & Development*, 336 N.W.2d 529, 533 (Minn.1983); *Ashenbrenner v. City of East Grand Forks*, 257 Minn. 368, 372, 102 N.W.2d 28, 30 (1960).

▪ Here, the trial court, upon review of the various negotiated agreements and the considerable financial documentation offered by the state, concluded that the "mere pendency of this lawsuit has the effect of a preliminary injunction" against the sale of certain bonds and constituted a threat to the continued viability of the entire project. The trial court then calculated a delay of 3 to 6 months to final resolution of the action and set the bond in the amount of $30 million to reflect the antici-

---

any action taken or proposed to be taken, by any public body or its officers or agents in the course of the authorization or sale, issuance or delivery of bonds, the making of a contract for public improvement or the validity of any proceeding to alter the organization of a school district in any manner, such public body may move the court for an order requiring the party, or parties, bringing such action to file a surety bond as hereinafter set forth. Three days' written notice of such motion shall be given. If the public body is not a party to the action, but if it deems that such action be injurious to the public interest and to the taxpayers, such public body may intervene or appear specially for the purpose of making such motion. If the court determines that loss or damage to the public or taxpayers may result from the pendency of the action or proceeding, the court may require such party, or parties, to file a surety bond, which shall be approved by the court, in such amount as the court may determine. Such bond shall be conditioned for payment to the public body of any loss or damage which may be caused to the public body or taxpayers by such delay, to the extent of the penal sum of such bond, if such party, or parties, shall not prevail therein. If such surety bond is not filed within a reasonable time allowed therefor by the court, the action shall be dismissed with prejudice. If such party, or parties, file a bond as herein required and prevail in the action, any premium paid on the bond shall be repaid by or taxed against the public body.

pated total cost to the state and its taxpayers occasioned by that delay. Our review of the record demonstrates no clear abuse of the trial court's discretion, and, accordingly, its order directing the filing of a $30 million surety bond is affirmed. The failure of the plaintiffs to file the requisite bond properly resulted in the dismissal of their action with prejudice.

Opinion and concurrence of the court of appeals vacated and declared to be of neither dispositional nor precedential value; judgment of dismissal with prejudice entered in the trial court affirmed.