Steven ANDERLY d/b/a Nye's Polonaise
Room Restaurant, et al.,
Respondents,

v.

CITY OF MINNEAPOLIS, Respondent,

Minneapolis Community Development
Agency, Petitioner, Appellant,

Brighton Development Corporation
and Marquette Historic Limited
Partnership, Respondents.

No. C5–95–1021.

Supreme Court of Minnesota.

Aug. 8, 1996.

Kennedy & Graven, Chartered, Robert A. Alsop, John M. LeFevre, Jr., Minneapolis, for Appellant.

Lommen, Nelson, Cole & Stageberg, P.A., Kay Nord Hunt, James M. Lockhart, Minneapolis, for Respondents.

OPINION

TOMLJANOVICH, Justice.

This action arises from the sale and development of a certain parcel of real property in the City of Minneapolis known as the Marquette Block. Since the early 1980's, the property has been owned by appellant Minneapolis Community Development Agency (MCDA). At the time this action was commenced, the property was slated for development pursuant to redevelopment contracts entered into between the MCDA and respondents Marquette Historic Limited Partnership (Marquette Partnership) and Brighton Development Corporation (Brighton).[1] Respondents Steven Anderly and Old St. Anthony Association (collectively, the Association) commenced this action on or about January 4, 1995, seeking an order enjoining the development of Marquette Block and declaring the redevelopment contracts invalid based on the purported wrongful issuance of a conditional use permit by the City of Minneapolis (the City).

On February 23, 1995, the MCDA moved for an order requiring the Association to post a surety bond pursuant to Minn.Stat. § 469.044 (1994). In an order dated March 3, 1995, the Hennepin County District Court granted the MCDA's motion. The district court subsequently denied a motion for reconsideration brought by the Association and dismissed the suit with prejudice after the Association failed to post the bond. Judgment was entered on March 30, 1995.

The Association appealed the judgment to the court of appeals May 9, 1995. The court of appeals reversed the district court concluding that a bond was not necessary. *Anderly v. City of Minneapolis*, 539 N.W.2d 816 (Minn.App.1995), *rev. granted* (Jan. 25, 1996). The MCDA then appealed to this court.

Marquette Block is located north of the east bank of the Mississippi River and is bounded by East Hennepin Ave., University Ave. S.E., Bank Street and Second Ave. S.E.

---

1. Brighton is the general partner of Marquette Partnership.

Five commercial buildings located on the block are certified as historic structures. The area around the buildings was vacant and was being leased to neighborhood businesses on a month-to-month basis for surface parking.

In July of 1990, the Minneapolis City Council approved guidelines which set out specific objectives for the development of the Marquette Block along with another adjacent parcel known as the Coke Block. On July 29, 1994, the MCDA chose Brighton as the developer for the Marquette Block.

Brighton proposed a two phase plan for the development of the Marquette Block. The first phase (Phase One) involved the rehabilitation of the five historic buildings which was to result in new commercial space and 20 new, low-to-moderate income rental apartments. This phase also included the construction of structured parking which was to provide spaces to the general public in addition to the parking required for the residential and commercial development on the site. The cost of Phase One was estimated at $2,435,000. The second phase (Phase Two) of the Brighton proposal called for the construction of townhomes with underground parking spaces at an estimated total cost of $2,904,000.

On November 30, 1994, the MCDA executed redevelopment contracts with Marquette Partnership for Phase One of the project and with Brighton for Phase Two. The contracts provided for a total sales price for the property of $500,000. The overall cost of the project was estimated at $5.357 million and the improvements were expected to generate $114,000 in additional real estate taxes per year upon completion.

The Association initially commenced this action on or about January 4, 1995, but served an amended complaint on January 23, 1995. The amended complaint sought an order from the district court which (1) declared the issuance of the conditional use permit by the City to be unreasonable, arbitrary, capricious, unauthorized, and otherwise contrary to law; (2) invalidated the redevelopment contract for the projects between the MCDA and Marquette Partnership; and (3) enjoined the development from proceeding without first adequately providing for the parking needs of the businesses in the area.

Brighton had arranged for financing commitments for both phases of the redevelopment from First Bank National Association (First Bank). However, there was evidence showing that one condition of this financing was that the current lawsuit be "resolved to the Bank's satisfaction." Further, in its brief, the MCDA claims that it could not provide insurable title to Marquette Partnership because the title company would not insure over the challenge to the conditional use permit. Finally, there was evidence that First Bank's financing commitment would expire on May 31, 1995. The remainder of the financing for the redevelopment project was intended to come from the sale of both low income housing tax credits and historic tax credits.

According to affidavit testimony, Paul Madson, Brighton's architect for this project, four of the five historic buildings on the Marquette block were in "delicate structural condition." The roofs and flashing on the buildings had "decayed to the point that there is extensive leaking and water damage." According to Madson, the repair and renovation of these buildings had to commence immediately. Any additional significant snowfall during the winter or rainfall in the spring of 1995 could have potentially caused permanent structural damage which would have rendered them incapable of renovation. In its brief, the MCDA claimed that the equity investments anticipated from the historic tax credits were in danger of being lost if the buildings on the Marquette Block were allowed to deteriorate beyond the point where rehabilitation was economically feasible.

Ann Calvert, business development manager for the MCDA, stated in an affidavit that, as a result of the above outlined financing arrangements and possible loss of historic buildings, "the pending litigation prevents MCDA from carrying out its redevelopment obligations under statute and contract for the Marquette site." She also stated that

[t]he Marquette development will * * * benefit the public by allowing MCDA to satisfy a low-income housing replacement commitment which it previously made. The Marquette project will create an additional thirteen (13) replacement affordable housing units above and beyond those created by the ongoing MCDA housing activities. The completion of the Marquette project will relieve the MCDA from having to expend substantial resources in the future in order to meet this housing replacement commitment.

Pursuant to Minn.Stat. § 469.044 (1994), the MCDA moved for an order requiring the Association to post a surety bond in an amount equal to the value of the project ($5,357,000). On March 3, 1995, the district court granted the MCDA's motion requiring (1) that, within seven days of the order, the Association must post a surety bond in the amount of $500,000; (2) the parties must submit the pending action to the district court for disposition by May 1, 1995; (3) if, on May 1, 1995, the parties had not submitted the action, then the Association must post an additional $2 million bond by May 8, 1995; and (4) that if the Association failed to post the bond the action would be dismissed with prejudice.

On March 10, 1995, the Association filed a motion for reconsideration of the court's order. In an order dated March 16, 1995, the district court denied the Association's motion for reconsideration and dismissed the action with prejudice based on the Association's failure to post bond. Judgment was entered on March 30, 1995. The Association appealed the judgment to the court of appeals. The court of appeals reversed the district court's holding that no bond was necessary because section 469.044 did not apply. *Anderly*, 539 N.W.2d at 820.

On December 26, 1995, the MCDA filed a petition for review in this court. On January 25, 1996, this court granted the MCDA's petition for review and on February 26, 1996, the MCDA filed its brief. In response, the Association filed its brief on March 28, 1996 as respondents. Then, on April 2, 1996, Brighton and Marquette Partnership filed a brief as respondents.

Because neither Brighton nor Marquette Partnership filed a petition for further review or a conditional petition for further review, and because Brighton's and Marquette Partnership's position in this case is not opposed to the MCDA's, on April 4, 1996, the Association filed a motion to strike Brighton and Marquette Partnership's brief. In an order dated April 25, 1996 the Chief Justice stayed consideration of the Association's motion until consideration of the matter on its merits.

■ We turn first, then, to the motion to strike Brighton and Marquette Partnership's brief. These parties contacted and received instruction from the office of the Commissioner of the Supreme Court that if they wished to file a brief, they should file as respondents. Thus, because the Commissioner's office represented to the parties that they would be allowed to file a brief, we deny the Association's motion to strike Brighton and Marquette Partnership's brief. We will instead treat the brief as that of an Amicus.

■ The first argument raised by Brighton and Marquette Partnership is that this appeal is moot under *Sisto v. Housing & Redev. Auth. of Duluth*, 258 Minn. 391, 104 N.W.2d 529 (1960).[2] However, this court

---

2. In *Sisto*, the plaintiff brought suit against the Housing and Redevelopment Authority of Duluth to enjoin it from proceeding with a redevelopment project. *Id.* at 392, 104 N.W.2d at 530. The trial court denied the plaintiff's application for a temporary injunction. *Id.* Defendant then moved the court for an order requiring the plaintiff to furnish a surety bond under, *inter alia*, Minn.Stat. § 462.713 (1957). *Id.* The court granted the defendant's motion and required the plaintiff to post a bond within a given time frame or have the case dismissed with prejudice. *Id.* Before the period for posting bond had run, plaintiffs filed appeals of both the order denying a temporary injunction and the order requiring plaintiffs to post bond. However, while plaintiffs filed a cost bond with their notice of appeal, they filed no supersedeas bond. *Id.* Then, after the time the court allowed for the posting of a surety bond had expired, the defendants moved the supreme court for an order dismissing both appeals "on the ground that the case ha[d] been dismissed with prejudice * * * and that all questions involved in the appeal ha[d] become moot." *Id.* This court granted the defendants motion and dismissed the appeal. *Id.* at 396, 104 N.W.2d at 532.

may decline to hear an issue if it is not raised in either a petition for further review or a conditional petition for further review. *See Northwest Racquet Swim and Health Clubs, Inc. v. Deloitte & Touche,* 535 N.W.2d 612, 613 n. 1 (Minn.1995); *Hapka v. Paquin Farms,* 458 N.W.2d 683, 685–86 (Minn.1990). The MCDA did not raise this issue in its petition for further review and Brighton and Marquette Partnership did not file a petition for further review, thus, we decline to address this issue. We therefore reach the substantive issue in the case; namely, the propriety of the district court's requirement that a surety bond be posted and the amount of that bond.

■ Minn.Stat. § 469.044 (1994) dictates when a public corporation (in this case, the MCDA) may move a court for an order requiring the party instigating the action to post a surety bond. Section 469.044 provides:

> When any action or proceeding at law or in equity is commenced, drawing in question the right, power, or authority of a public corporation created and operating under section 469.001 to 469.047 to do any act or to make or perform any contract or agreement or to undertake or enter upon the discharge of any obligations or commitments under those statutes, the corporation may, if it deems that the pendency of the litigation might directly or indirectly impair its borrowing power, increase the cost of its projects, or be otherwise injurious to the public interest, move the court in which the litigation is pending to require the party who instituted the suit to give a surety bond as provided in section 469.045 to 469.047.

*Id.* Minn.Stat. § 469.045 (1994) specifies when a district court may order that the plaintiff in an action post a surety bond. Section 469.045, in pertinent part, states:

> If the court determines that loss or damage to the public or taxpayers may result from the pendency of the action or proceeding, the court may require the party

who instituted it to give a surety bond, approved by the court or judge, in a penal sum to be determined by the court to protect against loss or damage. * * * If the bond so ordered is not filed within the reasonable time allowed by the court, the action or proceeding shall be dismissed with prejudice.

We find that the requirements of these statutes have been met.

We find first that this action "draw[s] in question the right, power, or authority" of the MCDA to contract for the redevelopment of the Marquette Block in accordance with the redevelopment plan. Minn.Stat. § 469.044. Minn.Stat. § 469.029, subd. 1 (1994) provides that "[i]n accordance with a redevelopment plan, a[ ] [redevelopment] authority may make any of its land in a redevelopment project available for use by private * * * partnerships * * * or other private interests * * * by sale * * * ." In the prayer for relief of its amended complaint, the Association asked the district court for a judgment "[d]eclaring that the Redevelopment Contract entered into between the MCDA and Marquette L.P. is invalid for purposes of the proposed use to the property provided therein."[3] Part of this redevelopment contract provided for the sale of Marquette block to Marquette L.P. Thus, given the Association's amended complaint, this suit quite directly drew into question the right and power of the MCDA to contract for the sale of its land for use in accordance with a redevelopment plan.

The court of appeals, however, viewed this suit as "merely challeng[ing] the city's authority to grant Brighton a CUP * * * ." *Anderly,* 539 N.W.2d at 820. Still, Brighton's proposal, which has to have been in conformance with the redevelopment plan, was contingent upon obtaining a conditional use permit from the City of Minneapolis. If Brighton was barred from obtaining a conditional use permit, then the MCDA certainly could not enter into a valid contract to have

---

**3.** After the district court issued its order of March 3, 1995 the Association filed a second amended complaint striking its request to have the redevelopment contract invalidated. The dis-

trict court did not discuss this second amended complaint in its order of March 16, 1995 dismissing the case.

Brighton carry out its proposal. Thus, even if this suit were merely a challenge to the city's "authority to grant Brighton a CUP," it still draws into question the MCDA's right and power to contract with a private partnership to redevelop the Marquette Block in accordance with the redevelopment plan.

The Association argues that this suit does not draw into question the rights or power of the MCDA because the redevelopment contract is "structured to deal with this * * * litigation." However, even if a redevelopment contract had not yet been entered into between the MCDA and Brighton, this suit would still trigger section 469.044. Indeed, it seems that this suit would draw into question the MCDA's right to contract with any developer whose proposal required the issuance of a conditional use permit. Thus, we fail to comprehend what bearing the Association's arguments concerning the specific terms of the development contract have on this case.

We also find that the section 469.044 requirement that the MCDA "deem[ ] [that] the pendency of the litigation might directly or indirectly * * * be * * * injurious to the public interest" was met in this case. Minn. Stat. § 469.044. In the MCDA's memorandum to the district court in support of its motion for a surety bond, it stated that "[t]he pending litigation is injurious to the public interest because it precludes the commencement of a major redevelopment project on the Marquette Block and irreparably threatens the preservation of five historic buildings on the property." This quite plainly meets the second element of section 469.044. We conclude that the elements of section 469.044 were met and, therefore, the MCDA correctly moved the district court for an order requiring plaintiffs to post a surety bond.

■ The court of appeals held that "the district court abused its discretion in ordering a bond under section 469.044." *Anderly,* 539 N.W.2d at 820. However, it is section 469.045 that sets out the conditions under which the district court may require a bond. Specifically, the court must "determine that loss or damage to the public or taxpayers may result from the pendency of the action * * * ." Minn.Stat. § 469.045.

■ This court will uphold the district court's determination of the "necessity of a surety bond to protect the public interest, the amount of the bond and the 'reasonable time' allowed for the filing of the bond" absent a "clear abuse" of the district court's discretion. *Pike v. Gunyou,* 491 N.W.2d 288, 291 (Minn.1992) (citations omitted). We conclude that there was no abuse of discretion.

Regarding whether loss or damage to the public may result from the pendency of this action, the trial court, in its memorandum accompanying its order of March 3, stated that

The pendency of this action has effectively enjoined performance of the redevelopment contract because FirstBanks will not advance the loans necessary to begin the project until this action is resolved. Therefore, the five historic buildings on the Marquette Block will continue to deteriorate, and may ultimately make rehabilitation more expensive or impossible. Moreover, because the financing commitment has already been delayed once because of the pending action, and there is no guarantee that FirstBanks would agree to a second delay, Plaintiffs' action potentially prevents the entire redevelopment project if it continues beyond May 31, 1995 (the deadline for closing on the loans).

The district court thus found that there was potential for injury to the public as a result of the pending suit.

The district court had evidence before it which supported the above findings. A letter from Gregory A. Wittnebel, Vice President of First Banks, stated that a condition of the financing was that there be "evidence that the 'Litigated Matters' [referring to the current suit] * * * have been resolved to the Bank's satisfaction." Paul Madson, architect for Brighton, stated in an affidavit dated February 16, 1995, that

it is my opinion that the repair and renovation of [three of the five buildings located on Marquette Block] must commence immediately. Any further significant snowfall this winter, and even normal rainfall this spring, will cause more serious damage to the wood structures of these buildings. Large amounts of snow and rain

could cause permanent, irreversible structural damage and could render these historic buildings incapable of renovation.

A second letter from Wittnebel indicates that the original date on which the loans to Marquette Partnership had to close was February 28, 1995 and that First Banks would extend that date to May 31, 1995. Thus, the district court did not abuse its discretion in making the findings cited above.

Further, the conclusion, drawn from these findings, that loss to the public may result from the pendency of the suit is entirely reasonable. The buildings on Marquette block had been abandoned and in disrepair for years. Brighton's project proposed to rehabilitate these buildings. If the project fell through, the buildings could remain abandoned and deteriorate. It is fundamental that such a result would be harmful to the public. Further, the MCDA contends that the Marquette project is expected to generate approximately $114,000 in additional real estate taxes per year upon its completion. Losing this tax revenue would cause harm to the public. Finally, in its memo to the trial court, the MCDA pointed that the Marquette project satisfies "certain low-income housing replacement commitments which have been previously made by the MCDA." This, the memo explained, would "relieve the MCDA from having to expend substantial resources in the future in order to meet this housing replacement commitment." Thus, the district court had ample evidence to conclude that a delay in the project might thwart it, which could result in injury to the public.

■ We find that the district court did not abuse its discretion in the amount of the bond. In its order of March 3, 1995, the district court required the Association to post a surety bond of $500,000 by March 10, 1995. It further provided that if the parties had not submitted the action to the court by May 1, 1995, the Association would be required to post an additional $2,000,000 surety bond.

The court of appeals concluded that the district court abused its discretion because the damages were too speculative. *Anderly*, 539 N.W.2d at 820. We disagree. First, section 469.045 only requires that loss or damage *may* result from the pendency of the

action. Further, the nature of the damages in any case such as this necessarily will be speculative. Indeed, due to the undeterminable nature of the damages which might have occurred in this case, we cannot say that an amount different from the initial $500,000 or the subsequent $2,000,000 would have been more appropriate. Thus, we hold that the district court did not abuse its discretion in either requiring a surety bond or setting the amount of surety bond in this case.

Reversed and judgment of dismissal reinstated.