STATE OF MINNESOTA

IN SUPREME COURT

A13-2044

Court of Appeals                                                    Wright, J.
                                                    Took no part, Page, J.

Webb Golden Valley, LLC,

                    Respondent,

Evelyn Thomson,

                    Plaintiff,

vs.                                                          Filed:  July 1, 2015
                                                    Office of Appellate Courts

State of Minnesota, et al.,

                    Appellant,

Global One Golden Valley, LLC,

                    Appellant,

Golden Valley Housing and Redevelopment Authority,

                    Appellant.
                    _____


Eric J. Magnuson, Robins Kaplan, LLP, Minneapolis, Minnesota; and

Daniel N. Rosen, Mark J. Kiperstin, Parker Rosen, L.L.C., Minneapolis, Minnesota, for respondent Webb Golden Valley, LLC.

Lori Swanson, Attorney General, Natasha M. Karn, Assistant Attorney General, Saint Paul, Minnesota, for appellant State of Minnesota.

Scott M. Hoffman, Hoffman Law Offices, Minneapolis, Minnesota, for intervenor Global One Golden Valley, LLC.

1

Allen D. Barnard, John T. Sullivan, Kyle R. Hardwick, Best & Flanagan LLP, Minneapolis, Minnesota, for respondent Golden Valley Housing and Redevelopment Authority.

Susan L. Naughton, League of Minnesota Cities, Saint Paul, Minnesota, for amicus curiae League of Minnesota Cities.

_____

S Y L L A B U S

1.    The loss of the opportunity to bid on land is an injury-in-fact that is sufficient to confer standing to challenge the State's conveyance of land pursuant to Minn. Stat. § 161.44 (2014).

2.    Because the district court's order for a surety bond is supported by evidence of potential lost investors and a loss of tax revenue, the district court did not abuse its discretion in ordering the surety bond.

Affirmed in part and reversed in part.

O P I N I O N

WRIGHT, Justice.

This appeal arises from a dispute over the State of Minnesota's proposed conveyance of land to the Golden Valley Housing and Redevelopment Authority ("HRA") pursuant to Minn. Stat. § 161.44 (2014), which governs the relinquishment of land no longer needed for trunk highway purposes. Respondent Webb Golden Valley, LLC ("Webb") owns nearby land and challenges the proposed conveyance, arguing that the conveyance violates section 161.44. We consider two issues: first, whether Webb has standing to challenge the State's conveyance of land based on Webb's loss of the

2

opportunity to bid on the parcels, and second, whether the district court erred by ordering Webb to pay a surety bond of $3.2 million. Regarding the first issue, we conclude that Webb's loss of the opportunity to bid on Tract N and Lot 18 at a public auction is an injury-in-fact sufficient to confer standing. Regarding the second issue, we hold that the district court did not abuse its discretion by ordering a surety bond. Accordingly, because Webb failed to pay the surety bond, we reinstate the district court's dismissal of Webb's complaint in its entirety.

I.

Appellant State of Minnesota acquired three parcels of land for use during the construction of Interstate 394. The Minnesota Department of Transportation owns the three parcels, which are referred to as Tract N, Lot 18, and the Alley Parcel. Because the State no longer needs the parcels, it plans to convey the land to the HRA, pursuant to Minn. Stat. § 161.44, subd. 1, which allows the State to convey excess land to a political subdivision for a public purpose.

The HRA has an agreement to convey Tract N to a private company, Global One Golden Valley, LLC ("Global One") after receiving the parcel from the State. Global One will build on the land an $85 million living facility ("the Project") comprising 120 units of senior housing and 314 units of multi-family apartments. The Project involves four parcels in total—one that Global One has already purchased, and the three parcels (Tract N, Lot 18, and the Alley Parcel) that the State seeks to convey to the HRA. Global One will purchase Tract N for construction of the Project and the HRA will designate Lot 18 and the Alley Parcel for use as public right-of-ways.

3

Webb had purchased a remainder interest in the Alley Parcel from its previous owner in 2003 and also owns property adjoining Tract N to the west. In March 2013, Webb sued the State, seeking a declaratory judgment that the transfer of the three parcels from the State to the HRA violates Minn. Stat. § 161.44 because the subsequent conveyance from the HRA to a private company is not for a public purpose. Webb sought an injunction to prevent the conveyance and to compel the State either to transfer the land to Webb or to offer it to the highest bidder at a public sale or auction. Global One intervened in the action, and both the State and Global One moved to dismiss the action on the ground that Webb lacked standing.

On July 22, 2013, the district court denied the motions to dismiss as to the Alley Parcel. The district court concluded that Webb may have a remainder interest in the parcel, giving Webb standing to challenge the transfer of the parcel to the HRA. *See* Minn. Stat. § 161.44, subds. 2-3 (allowing the State to convey the excess land to the previous owner of the parcel or to the person owning a remainder interest in the parcel). However, the district court granted the motions to dismiss as to Tract N and Lot 18, holding that Webb lacks standing under Minn. Stat. § 161.44 because Webb has no legal interest in these parcels. The district court determined that Webb's interest is insufficient to confer standing because Webb's only grievance with respect to Tract N and Lot 18 is that Webb has lost the opportunity to purchase the land at a public auction. *See* Minn. Stat. § 161.44, subds. 5-6 (allowing the State to offer the excess land to the highest bidder at a public sale or auction).

4

On September 24, 2013, the HRA made a special appearance in the district court to move for an order directing Webb to post a surety bond, pursuant to Minn. Stat. §§ 469.044, 469.045 (2014). Sections 469.044 and 469.045 allow a district court to require a party bringing an action that draws into question the authority of a public corporation to post a surety bond "[i]f the court determines that loss or damage to the public or taxpayers may result from" the lawsuit. Minn. Stat. § 469.045. The HRA sought a surety bond in the amount of $10 million to protect against potential losses, including the loss of investors and the loss of tax revenue. Finding that the HRA provided sufficient evidence to demonstrate that Webb's litigation could harm the public interest based on the threat of lost investors and the loss of tax revenue from the parcels, the district court granted the HRA's motion and ordered Webb to post a surety bond of $3.2 million by October 15, 2013. When Webb failed to post the surety bond as ordered, the district court dismissed Webb's lawsuit in its entirety with prejudice. *See id.* ("If the bond so ordered is not filed within the reasonable time allowed by the court, the action or proceeding shall be dismissed with prejudice.").

The court of appeals reversed both the district court's partial dismissal for lack of standing and the dismissal of the lawsuit for failure to pay a surety bond and remanded for further proceedings. *Webb Golden Valley, LLC v. State*, No. A13-2044, 2014 WL 3022813, at *3-5 (Minn. App. July 7, 2014). The court of appeals held that Webb's interest in purchasing Tract N and Lot 18 was sufficient to confer standing to challenge the State's proposed transfer of the parcels. *Id.* at *4. And regarding the surety bond, the

court of appeals determined that the HRA's allegations of public harm were not supported by evidence in the record. *Id.* at *3.

We subsequently granted the petitions for further review of Global One, the State, and the HRA on both the issues of standing and the surety bond.

II.

We first address whether Webb has standing to challenge the State's conveyance of land pursuant to Minn. Stat. § 161.44. Standing is a jurisdictional issue, which we review de novo. *In re Custody of D.T.R.*, 796 N.W.2d 509, 512 (Minn. 2011).

To have standing, a party must have a sufficient stake in the controversy to seek relief from the court so that the issues before the court will be "vigorously and adequately presented." *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 624 (Minn. 2007). A party has standing when (1) the party has suffered an injury-in-fact, or (2) the party is the beneficiary of a legislative enactment granting standing. *Id.*; *Snyder's Drug Stores, Inc. v. Minn. State Bd. of Pharmacy*, 301 Minn. 28, 32, 221 N.W.2d 162, 165 (1974). In this case, Webb must establish an injury-in-fact to have standing because Minn. Stat. § 161.44 does not include a legislative grant of standing. *See* Minn. Stat. § 161.44; *In re Complaint Against Sandy Pappas Senate Comm.*, 488 N.W.2d 795, 797 (Minn. 1992).

"An injury-in-fact is a concrete and particularized invasion of a legally protected interest." *Lorix*, 736 N.W.2d at 624. The injury must be more than mere dissatisfaction with the State's interpretation of a statute. *In re Complaint Against Sandy Pappas Senate Comm.*, 488 N.W.2d at 797. Here, Webb must articulate a legally cognizable interest that

6

it has suffered because of the State's action and that "differs from injury to the interests of other citizens generally." *Id.*

Webb contends that its loss of the opportunity to bid on Tract N and Lot 18 is an injury-in-fact sufficient to confer standing. We agree. Because Webb has demonstrated its interest in obtaining the parcels at issue, Webb has a concrete interest in bidding on the property that is distinguishable from the interests of the general public. Specifically, Webb seeks the opportunity to purchase Tract N and Lot 18 to add to its holdings in the area. Webb is not challenging the State's authority simply to ensure that Minn. Stat. § 161.44 is properly applied.[1] Webb is asserting its right to bid on land in which Webb has a particularized interest. If the State's conveyance of Tract N and Lot 18 is not challenged, Webb will lose the opportunity to bid on those parcels. The loss of that opportunity, given Webb's particularized interest in Tract N and Lot 18, constitutes an injury-in-fact sufficient to give Webb standing in this case.

III.

We next consider whether the district court abused its discretion by ordering Webb to post a surety bond pursuant to Minn. Stat. § 469.045 (2014). A public corporation, whose authority is challenged in a lawsuit, is permitted to move the district court for a surety bond "if it deems that the pendency of the litigation might directly or indirectly impair its borrowing power, increase the cost of its projects, or be otherwise injurious to

---

[1] Webb is not making a constitutional challenge to Minn. Stat. § 161.44. Rather, Webb is arguing that the State's transfer of the land to the HRA in this case does not satisfy the public purpose requirement of Minn. Stat. § 161.44.

the public interest." Minn. Stat. § 469.044 (2014). The district court may then order the plaintiff in the case to pay a surety bond "[i]f the court determines that loss or damage to the public or taxpayers may result from the pendency of the action or proceeding." Minn. Stat. § 469.045.

We first determine whether Webb's lawsuit questions the authority of the HRA. Next, we consider whether loss or damage to the public or taxpayers may result from Webb's lawsuit. Finally, we determine whether the public purpose definition from Minn. Stat. § 117.025, subd. 11 (2014), modifies the public harm requirement in Minn. Stat. § 469.045. We review the district court's order requiring a surety bond for an abuse of discretion. *Anderly v. City of Minneapolis*, 552 N.W.2d 236, 241 (Minn. 1996).

### A.

To qualify for a surety bond in this case, Webb's lawsuit must "draw[] in question the right, power, or authority of [the HRA] to do any act or to make or perform any contract or agreement or to undertake or enter upon the discharge of any obligations." Minn. Stat. § 469.044. Both the district court and the court of appeals held that Webb's claim challenges the HRA's authority to perform its contract with Global One. Webb argues that its lawsuit does not challenge the authority of the HRA; rather, it challenges the State's power to convey the land.[2] We disagree.

---

[2]     Global One contends that, because Webb did not appeal the court of appeals' determination that the lawsuit challenges the authority of the HRA, the issue is not before us. But Webb is not required to appeal to preserve alternate theories for affirmance. *Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 331 (Minn. 2010). Therefore, we may address this issue.

In *Anderly v. City of Minneapolis*, we concluded that a redevelopment agency was eligible for a surety bond, even though the plaintiffs were not directly challenging the authority of the redevelopment agency. 552 N.W.2d at 240-41. The plaintiffs in *Anderly* sued the City of Minneapolis, seeking to enjoin the development of a parcel of land based on a purported wrongful issuance of a conditional use permit by the City of Minneapolis. *Id.* at 237. We determined that the redevelopment agency could not have entered into the development project without obtaining the conditional use permit. *Id.* at 240-41. Therefore, the lawsuit drew into question the authority of the agency to contract for the parcel's redevelopment, even though the plaintiffs had directly challenged only the City's issuance of the permit. *Id.* at 241.

Similarly, Webb's lawsuit challenges the State's authority to convey the three parcels to the HRA, thereby drawing into question the HRA's right to receive the land. Without the State's conveyance of the land to the HRA, the HRA will be precluded from moving forward with its development contract. Accordingly, this lawsuit challenges the authority of the HRA to redevelop the parcel.

### B.

We next address the potential harm, if any, to the public posed by this action. The district court may order a party to post a surety bond when "the court determines that loss or damage to the public or taxpayers may result from the pendency of the action or proceeding." Minn. Stat. § 469.045. Here, the district court ordered Webb to post a surety bond of $3.2 million, finding that the pendency of the lawsuit might result in injury to the public. The district court relied on evidence demonstrating the potential loss

9

of investors, which could cause the parcels to "remain abandoned and unused," and on evidence of a loss in tax revenue. The court of appeals reversed, holding that "[u]nsupported conclusory claims from an interested party" were insufficient to establish that the public would be harmed if the Project failed. *Webb Golden Valley, LLC v. State*, No. A13-2044, 2014 WL 3022813, at *3 (Minn. App. July 7, 2014). We conclude that, because evidence in the record supports the district court's determination of potential injury to the public, the district court did not abuse its discretion by ordering a surety bond.

The HRA submitted an affidavit from the manager of Global One, stating that if the litigation is not resolved soon, "the Project will abruptly unravel." The manager indicated that an investor had already pulled out of the Project, and the district court found that with further delay, "the three parcels are at risk to remain abandoned and unused." In addition, the manager's affidavit and the City's planning documents state that construction of the Project will generate hundreds of jobs. According to the manager's affidavit, the ongoing litigation delays and threatens the creation of those anticipated jobs.

Webb argues, and the court of appeals held, that this evidence cannot support a finding of damage to the public because it fails to meet the definition of "public purpose" in the eminent domain statute. *See* Minn. Stat. § 117.025, subd. 11. Webb maintains that, if tax revenue is not for a public purpose under section 117.025, loss of tax revenue cannot support the issuance of a surety bond under section 469.045. We disagree.

10

The court of appeals erred when it imported the "public purpose" definition from section 117.025 and applied it to the district court's determination under section 469.045 that the lawsuit may harm the public. Section 117.025, subdivision 11, defines "public purpose" for laws authorizing the exercise of eminent domain. The "public purpose" definition expressly excludes "an increase in tax base, tax revenues, employment, or general economic health." *Id.*, subd. 11(b). The court of appeals determined that, because an increase in tax revenue is not a "public purpose" in the context of eminent domain, an increase in tax revenue cannot demonstrate a "public injury" supporting the order of a surety bond. However, section 469.045 does not require the surety bond to be in the "public interest" or for a "public purpose." This importation of the "public purpose" definition from the eminent domain statute is erroneous.

Further, section 117.025 applies to "chapter [117] and any other general or special law authorizing the exercise of the power of eminent domain." *Id.*, subd. 1. Section 469.045 does not authorize the exercise of eminent domain. It allows the district court to require a party that instituted an action against a public corporation to post a surety bond. Minn. Stat. § 469.045. Because the application of section 117.025 is limited to those statutes authorizing the use of eminent domain, it is not applicable here.

Section 469.045 does not authorize the exercise of eminent domain. It allows the district court to require a party that instituted an action against a public corporation to post a surety bond. Minn. Stat. § 469.045. The provision does not use the phrase "public purpose"; rather, it requires the district court to find that "loss or damage to the public *or taxpayers* may result." *Id.* (emphasis added).

11

By its plain language, section 469.045 provides that potential harm to taxpayers is a ground for granting a party's motion for a surety bond. *Id.* We have held that the loss of tax revenue is sufficient to meet the harm requirement for a surety bond. *Anderly*, 552 N.W.2d at 242. The district court properly applied the plain meaning of section 469.045 when it found that the loss of tax revenue from the Project supports the requirement for a surety bond. As long as the State owns the land, the City receives no tax revenue from the parcels. This lawsuit has already delayed the Project by more than two years, arguably costing the City millions of dollars in tax revenue. These facts form a sufficient basis for the district court to find potential harm to the public or taxpayers as required by section 469.045.

## IV.

Although we conclude that Webb had standing, the district court did not abuse its discretion by ordering Webb to post a surety bond. Because Webb did not post the surety bond, we reinstate the district court's dismissal of Webb's lawsuit with prejudice.

Affirmed in part, reversed in part.


PAGE, J., took no part in the consideration or decision of this case.