STATE OF MINNESOTA

IN SUPREME COURT

A23-1762

Court of Appeals                                           Hudson, C.J.

In the Matter of the Welfare of the Children of:
L.K., Parent.

Filed: March 11, 2026
Office of Appellate Courts

———————————————

A24-1296

Martin County

In the Matter of the Welfare of the Children of:
L.K., Parent.

———————————————

Mark D. Fiddler, Rachel L. Osband, Fiddler Osband Flynn LLC, Minnetonka, Minnesota;

Timothy Sandefur, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Arizona; and

Jeffrey M. Markowitz, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for appellants K.R. and N.R.

Taylor L. McGowan, Martin County Attorney, Amanda L. Heinrichs-Milburn, Assistant Martin County Attorneys, Fairmont, Minnesota, for respondent Human Services of Faribault and Martin Counties.

Ryan A. Gustafson, Frundt, Lundquist & Gustafson, Ltd., Blue Earth, Minnesota, for respondent L.K.

m boulette, boulette PLLC, Minneapolis, Minnesota;

Seungwon R. Chung, Abby N. Sunberg, Taft Stettinius & Hollister LLP, Minneapolis, Minnesota; and

Jody M. Alholinna, Minnesota Guardian ad Litem Program, Saint Paul, Minnesota, for respondent Guardian ad Litem McKenzie Borth.

1

Joseph Plumer, Riley Plumer, Plumer Law Office, Bemidji, Minnesota; and

Tammy J. Swanson, Swanson, Drobnick & Tousey P.C., Woodbury, Minnesota, for respondent Red Lake Nation.

Keith Ellison, Attorney General, Liz Kramer, Solicitor General, Anna L. Veit-Carter, Kaitrin C. Vohs, Assistant Attorneys General, Saint Paul, Minnesota, for intervenor Attorney General for the State of Minnesota.

Teresa Nelson, Catherine Ahlin-Halverson, Daniel R. Shulman, American Civil Liberties Union of Minnesota, Minneapolis, Minnesota; and

Crystal Pardue, American Civil Liberties Union, New York, New York, for amici curiae American Civil Liberties Union and American Civil Liberties Union of Minnesota.

Joseph F. Halloran, Christopher Smith, The Jacobson Law Group, Saint Paul, Minnesota; and

Sydney Tarzwell, Native American Rights Fund, Anchorage, Alaska, for amici curiae California Tribal Families Coalition, et al.

Robert C. Roby, RC Roby Law, PLLC, Cambridge, Minnesota, for amicus curiae Christian Alliance for Indian Child Welfare.

Brooke Beskau Warg, Hennepin County Adult Representation Services, Minneapolis, Minnesota, for amicus curiae Hennepin County Adult Representation Services.

Mallory K. Stoll, Blahnik, Prchal & Stoll, PLLC, Prior Lake, Minnesota; and

Natalie Netzel, Mitchell Hamline School of Law, Saint Paul, Minnesota, for amicus curiae Institute to Transform Child Protection.

Joseph F. Halloran, James K. Nichols, Joy P. Parker, Roxanne Reinfeld, Jacobson, Magnuson, Anderson & Halloran, P.C., Saint Paul, Minnesota; and

Sarah M. Stahelin, Leech Lake Band of Ojibwe Legal Department, Cass Lake, Minnesota, for amici curiae Leech Lake Band of Ojibwe, et al.

James R. Todd, Dewitt LLP, Minneapolis, Minnesota;

Elizabeth J. Juelich, Krueger, Juelich & Schmisek PLLC, Minnetonka, Minnesota;

Mary Catherine Lauhead, Offices of Mary Catherine Lauhead, Saint Paul, Minnesota; and

Michael D. Dittberner, Ditterberner Family Law, Ltd., Edina, Minnesota, for amicus curiae Minnesota State Bar Association, Family Law Section.

1. The district court did not abuse its discretion when it denied appellants' motion to permissively intervene in a Child in Need of Protection or Services action in juvenile court pursuant to Minnesota Rule of Juvenile Protection Procedure 34.02.

2. A petition for third-party custody filed in juvenile court is non-cognizable and is instead properly construed as a petition for a transfer of legal and physical custody, which may only be filed by a party to the juvenile court action.

3. A holding in a court of appeals opinion that is advisory in nature and goes beyond the narrow issues implicated in the orders giving rise to the appeal falls outside the appropriate scope of appellate review and warrants this court, in the exercise of its supervisory authority, vacating that portion of the opinion.

Affirmed in part and vacated in part.

O P I N I O N

HUDSON, Chief Justice.

On April 9, 2022, twins Ki. K. and Kh. K. were born in Martin County with severe medical problems. They are both eligible for membership in the Miskwaagamiiwi-zaaga'iganing Tribe, also known as Red Lake Nation. Immediately following their births, respondent Human Services of Faribault and Martin Counties (the County) filed a petition for a Child in Need of Protection or Services (CHIPS) on behalf of both children. Following an emergency protective care hearing, the children's interim legal care, custody,

3

and control were transferred from their biological mother, respondent L.K., to the County. Upon their discharge from the hospital, both twins were placed in emergency foster care with appellants, N.R. and K.R.  After approximately a year and a half, appellants learned the twins were scheduled to move imminently and live with one of their maternal relatives. In the twins' CHIPS proceedings, appellants filed an emergency motion for permissive intervention, a petition for third-party custody, and a motion to stay the move to the maternal relative.  The district court denied the motions for permissive intervention and for a stay of the move and dismissed the petition for third-party custody.  The district court did so without addressing appellants' argument that the Indian Child Welfare Act (ICWA) and the Minnesota Indian Family Preservation Act (MIFPA) violate the Fifth and Fourteenth Amendments' guarantees of equal protection.  Appellants appealed.  The court of appeals affirmed in part, reversed in part, and remanded for further proceedings on the issues of permissive intervention and third-party custody.  The court of appeals addressed appellants' constitutional challenge as to MIFPA, over arguments that the issue was not properly before that court.

Appellants filed a petition for review with this court, which we granted on two issues:  (1) whether ICWA and MIFPA violate the Fifth and Fourteenth Amendments' guarantees of equal protection; and (2) whether the district court and court of appeals erred as a matter of law in finding that the mother's preference for placement of her children with appellants did not constitute "good cause" to deviate from the placement preferences of MIFPA.  We heard oral argument on these two issues on September 30, 2024.  At oral argument, appellants confirmed that they had abandoned the second issue.

4

While the issue of ICWA's and MIFPA's constitutionality remained pending before our court, the district court reconsidered the permissive intervention motion and the third-party custody petition based on the court of appeals' remand instructions. The district court again denied permissive intervention and dismissed the petition for third-party custody. Appellants appealed the denials to the court of appeals and then filed a petition for accelerated review before this court, which we granted.

We now consolidate these two appeals for purposes of this decision. We hold that the district court did not err in denying appellants' petition for permissive intervention and in dismissing their third-party custody petition. We therefore affirm the district court's decision. With respect to the court of appeals' decision, the only issue still contested by the parties is whether ICWA and MIFPA violate constitutional requirements of equal protection. But we conclude that because appellants are not proper parties to the CHIPS proceedings, it is not appropriate to pass on their constitutional challenge. And because it was likewise unnecessary for the court of appeals to do so, we vacate the portion of the court of appeals' decision addressing the constitutionality of MIFPA.

**FACTS**

The following facts are established from the record on appeal, including the CHIPS petition, reports filed with the district court, and pretrial hearings. *See* Minn. R. Civ. App.

P. 110.01 (stating the record on appeal includes the documents filed in the trial court and the transcript of the proceedings).[1]

### *Initial Placement with Foster Parents*

Kh. K. and Ki. K. are Indian children[2] who were born in acute medical distress on April 9, 2022. The County filed a CHIPS petition three days after their births, alleging that they were medically neglected, lacked the level of care required for their physical health, were without proper parental care, and were in an environment that could be injurious to their health. Following an emergency protective care hearing on April 14, 2022, the district court transferred the children's interim legal care, custody, and control to the County. The

---

[1]    In general, the facts in this case are undisputed. The record is limited to the facts and guardian ad litem reports as established in the district court up to the time of the filing of the second appeal. However, two parties—the mother and appellants—ask us to take judicial notice of new facts that arose during the pendency of this appeal. Because these facts are irrelevant to our decision in this case, we will not take judicial notice of them. *See Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn. 1977) ("It is well settled that an appellate court may not base its decision on matters outside the record on appeal, and that matters not produced and received in evidence below may not be considered."). For that same reason, we grant the guardian ad litem's motion to strike the factual developments in footnote 16 of appellants' principal brief and page 14 of appellants' reply brief in the second appeal.

[2]    We use the term "Indian" in this opinion because "Indian" and "Indian child" are used by both ICWA and MIFPA and hold a statutorily defined meaning. *See* 25 U.S.C. §§ 1903(3), (4) (defining "Indian" as "any person who is a member of an Indian tribe, or who is an Alaska Native and a member of a Regional Corporation"; and defining "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe"); Minn. Stat. § 260.755, subds. 7, 8 (2024) (using the same definition of "Indian" person as ICWA; and defining "Indian child" as "an unmarried person who is under age 18 and is: (1) a member of an Indian tribe; or (2) eligible for membership in an Indian tribe"). Ki. K. and Kh. K. are Indian children because they are eligible for membership in Red Lake Nation.

6

district court issued an order after the hearing finding that the Indian Child Welfare Act (ICWA), *see* 25 U.S.C. §§ 1901–63, and the Minnesota Indian Family Preservation Act (MIFPA), *see* Minn. Stat. §§ 260.751–.835 (2024), applied to the proceedings because of the twins' eligibility for membership in Red Lake Nation.[3]

Due to the severity of the medical complications with which the children were born, both Kh. K. and Ki. K. spent several weeks in the hospital after their births. Kh. K. was discharged on April 20, 2022, and placed in a foster home with appellants, who are licensed foster parents but are not eligible for membership in an Indian tribe. Ki. K. remained in the hospital for several weeks after her brother's discharge, before her later release to appellants' home on May 16, 2022. Both twins remained at risk for developmental delays and other long-term risk factors and required ongoing medical support.

According to reports by a County social worker and a guardian ad litem (GAL) assigned to the case, appellants were diligent and loving foster parents. Among other things, they created a Native American cultural plan to connect the children with their tribal heritage and facilitated visits with the twins' biological mother. The foster parents took the twins to all their medical appointments, and doctors reported seeing positive growth and recovery in both children over the course of the one year that the twins lived with appellants. Parental reunification efforts on behalf of the County, the GAL, Red Lake Nation, and the mother were ongoing during this time. The County also instituted a case

---

[3] We agree with the district court's determination that ICWA and MIFPA apply.

plan with the mother to return her to parental fitness and achieve family reunification in compliance with Minnesota Statutes section 260C.212 (2024).

*September 12, 2023 Motion to Stay Placement with Maternal Relatives*

In July 2023, Red Lake Nation conducted a relative search for the twins' long-term placement options. The Tribe contacted one of the twins' maternal aunts, R.F., who was a registered foster parent, a member of Red Lake Nation, and who had one of the twins' half-siblings in her care. R.F. indicated she was willing and able to take the twins. Shortly before the planned move, the County informed appellants that the twins would be transitioned into R.F.'s care on September 13, 2023, and sent them details about the logistics of the transfer of physical placement. As the logistics evolved, appellants communicated with the County, Red Lake Nation, and the GAL about the planned transition. On September 12, 2023, before the twins had left appellants' home, appellants filed an emergency motion to stay the change of placement and to intervene in the twins' CHIPS proceedings.

In their September 12, 2023 emergency motion, appellants made four arguments: (1) that the court should grant them permissive intervention into the CHIPS proceedings as being in the best interests of the children pursuant to Minnesota Rules of Juvenile Protection Procedure 34.02; (2) in the alternative, the court should grant them party status to allow for them to file a transfer of legal custody permanency petition; (3) the court should make a finding that "good cause" exists under the placement preferences articulated in ICWA to temporarily place the children with them due to (a) the mother's preference for placement with them, and (b) the children's extraordinary medical needs; and (4) the court

8

should issue a declaratory judgment that MIFPA and ICWA are unconstitutional under the Equal Protection Clauses of the United States Constitution's Fifth and Fourteenth Amendments. In addition to the motion, appellants filed an affidavit in which they alleged that the mother told them numerous times that she supported the twins' permanent placement with appellants and that she opposed placement with R.F. Appellants also alleged that the County had "repeatedly represented to [them] that [they] were the preferred long-term placement for the twins," and that moving the twins to R.F.'s home would take the twins farther away from their medical team and their mother. Appellants simultaneously filed a notice of their constitutional challenge with the Minnesota and United States attorneys general. Respondent parties—the County, Red Lake Nation, and the GAL—all opposed the motion. The mother supported the motion.

In a September 13, 2023 emergency hearing, the parties agreed to defer consideration of the constitutional and permissive intervention issues and requested that the court determine only the issue of temporary placement. The court agreed to do so. The court also noted that it had not received independent verification from the mother—aside from the claims in appellants' affidavit—as to her placement preference for the twins.

On September 15, 2023, the district court ordered that the change of placement to R.F. was to continue as planned. In a subsequent written order, the court made the following findings: (1) it was in the children's best interests to allow the County to continue to have temporary custody over the children with the authority to place the children in alternative care; and (2) no good cause existed to deviate from ICWA, MIFPA, and the general child custody statutes' temporary placement preferences, under which R.F. would

9

be the designated preferred placement because she is a member of Red Lake Nation, she has the children's half-sister in her care, and she was approved as a placement option by the Tribe.

In September 2023, a few days after the hearing, the twins were formally moved from appellants to live with R.F. Nine months later, in June 2024, the twins were moved from R.F.'s house to that of their maternal grandmother, M.L., where they currently reside. The GAL's reports to the court—up to the time of the second appeal—continued to indicate that the twins were thriving in their grandmother's care: the grandmother lives close to their doctors; lives in the same neighborhood as their mother, who visits once a week; has one of the twins' other siblings in her care; and is a member of Red Lake Nation.

### October 4, 2023 Amended Motion to Intervene in CHIPS Proceeding

On October 4, 2023, appellants amended their motion to intervene in the CHIPS proceeding in juvenile court. *See* Minn. R. Juv. Prot. P. 34.02 (stating that "[a]ny person may be permitted to intervene as a party if the court finds that such intervention is in the best interests of the child"). Their only change was to request that the court join them as necessary parties to the proceedings, arguing that "joinder is[] (a) necessary for a just and complete resolution of the matter; and (b) in the best interests of the child." *See* Minn. R. Juv. Prot. P. 35. Concurrently, appellants filed a petition for third-party custody in juvenile court.[4] They alleged that they are interested third parties pursuant to Minnesota Statutes

---

[4] Juvenile court actions are governed by Minnesota Statutes chapter 260C (2024). The original jurisdiction of the juvenile court includes CHIPS matters, "permanency

10

section 257C.03, subdivisions 7(a)(1)(i)–(iii), and that it is in the best interests of the children for appellants to have sole legal and physical custody.[5] *See* Minn. Stat. § 257C.03, subd. 7(a)(2). The GAL opposed the amended motion for intervention, disputed that there was good cause to place the children with appellants, and moved to dismiss the petition for third-party custody. The County opposed granting appellants permissive intervention. The mother supported appellants' motion for permissive intervention or necessary party status and also filed an affidavit stating that she supported the twins' placement with appellants and did not want them with R.F. Red Lake Nation opposed the motion for permissive intervention and moved to dismiss the petition for third-party custody.

On October 5, 2023, the court held a hearing to discuss the amended motion for intervention and the petition for third-party custody. All parties agreed that the constitutional issues should be bifurcated from the permissive intervention and third-party custody claims, and the Minnesota Attorney General's Office reserved its right to argue the constitutional issues. The district court made the following determinations in an order dated October 31, 2023: (1) appellants are not interested third parties for purposes of a third-party custody petition; and (2) appellants' intervention should be denied because it is not in the best interests of the children for them to be placed with appellants. The

matters, including termination of parental rights," "postpermanency reviews," and "adoption matters." Minn. Stat. § 260C.001, subd. 1(b) (2024).

[5] Minnesota Statutes chapter 257C (2024) governs third-party and de facto custody proceedings. Ordinarily such proceedings are brought in family court. *See* Minn. Stat. § 257C.03, subd. 1(a) (providing that such proceeding may be brought "[i]n a court of this state with jurisdiction to decide child custody matters").

11

constitutional issues were not addressed in that order. On November 20, 2023, appellants appealed the September order denying the motion to stay placement and the October order denying intervention and dismissing the third-party custody petition.

### First Appeal of District Court's Orders

The court of appeals ruled on four issues in a divided precedential opinion issued June 3, 2024. *In re Welfare of Child. of L.K. & A.S.*, 9 N.W.3d 174 (Minn. App. 2024). First, the court considered whether the district court abused its discretion in denying appellants permissive intervention in the juvenile court proceeding. *Id.* at 183–85. Minnesota Rule of Juvenile Protection Procedure 34.02 governs permissive intervention in juvenile court and states: "Any person may be permitted to intervene as a party if the court finds that such intervention is in the best interests of the child." The court of appeals ruled that the district court erred by "considering circumstances relevant to placement but not relevant to *intervention*." *L.K.*, 9 N.W.3d at 184 (emphasis added). It reversed the district court's order denying appellants permissive intervention and remanded for the district court to reconsider the motion in light of the best interests of the children in terms of *intervention.* *Id.* at 185.

The court of appeals then turned to the district court's decision to dismiss appellants' third-party custody petition, which was filed in the juvenile court's CHIPS file. *Id.* at 185–86. The court of appeals first addressed whether appellants were "interested third parties" within the scope of Minnesota Statutes section 257C.03, which enables interested third parties who are not parents to petition for custody of a child. *L.K.*, 9 N.W.3d at 186–87. The statute's "definition of 'interested third party' provides that the term 'does

12

not include an individual who *has a child placed* in the individual's care' through a custody consent decree, 'a court order or voluntary placement under chapter 260C [foster care],' or an adoption." *Id.* at 186 (emphasis added) (quoting Minn. Stat. § 257C.01, subd. 3(b) (2022)). Thus, the court of appeals reasoned that this first issue turned on whether "interested third party" excluded all foster parents who had ever had a child placed in their care or excluded only foster parents who currently had a child in their home. *Id.* The court of appeals majority ultimately concluded that the statute excludes only *current* foster parents from petitioning for third-party custody, and because appellants did not have the twins in their home when they filed the petition, they were not categorically excluded by section 257C.01, subdivision 3(b). *Id.* at 187.

The court also addressed the proposition, presented by the GAL as an alternative ground of affirmance, that appellants are not permitted to file a third-party custody petition in a CHIPS case to which they are not a party. *Id.* The court of appeals first recognized that, based on its precedent in *Stern v. Stern*, 839 N.W.2d 96 (Minn. App. 2013), it is "the juvenile court [that] has jurisdiction over appellants' petition." *L.K.*, 9 N.W.3d at 188. And the court of appeals expressly left open that, "on remand, the district court [may] determine[] that appellants' third-party-custody petition should not have been filed in the pending CHIPS case."[6] *Id.* The court of appeals only rejected the specific argument made by the GAL that Minn. R. Juv. Prot. P 32.02(e)—which states that "part[ies] shall have the

---

[6]     The court of appeals also left open the possibility that, on remand "the district court may direct appellants to file [a third-party custody petition] in a new case." *L.K.*, 9 N.W.3d at 188.

13

right to . . . bring motions before the court"—on its own compels that "a person must be a party to a pending CHIPS case before filing a third-party custody petition in that case." *L.K.*, 9 N.W.3d at 188.

The third issue the court of appeals addressed concerned the district court's decision to temporarily place the twins with the maternal aunt rather than with appellants. *Id.* at 188–91. Both MIFPA and ICWA provide ranked preferences for temporary out-of-home placements. *See* 25 U.S.C. § 1915(b) (ICWA's placement preferences); Minn. Stat. § 260.773, subd. 3 (incorporating the order of ICWA's placement preferences). However, a court may depart from the preferences upon a finding of good cause.[7] Minn. Stat. § 260.773, subd. 10(2). Appellants argued that the district court erred when it determined that the good-cause exceptions advanced by appellants did not apply. The court of appeals, however, concluded that the district court did not err in rejecting appellants' arguments that there was good cause to depart from the placement preferences based on (1) the mother's attestation to the court that she preferred the twins stay with appellants and (2) the twins' medical needs. *L.K.*, 9 N.W.3d at 190–91. The court of appeals thus affirmed the district court's order that preferred placement with R.F., and in turn, with the grandmother M.L. *Id.* at 198.

---

[7] *See* Minn. Stat. § 260.773, subd. 10(2)(i), (iii) ("The court shall follow the placement preferences . . . except as follows: . . . where the court determines there is good cause based on: the reasonable request of the Indian child's parents . . . [or] the testimony of a qualified expert designated by the Indian child's Tribe . . . that supports placement outside the order . . . due to extraordinary physical or emotional needs of the Indian child that require highly specialized services . . . .").

14

Finally, the court of appeals turned to the merits of the constitutionality of MIFPA.[8] Although the court of appeals acknowledged that the district court had not decided the issue, and that appellate courts are generally limited to considering only those issues that were considered by the district court, the court of appeals nevertheless concluded that the issue was properly before it because, among other things, it had been presented to the district court and it was potentially decisive of the controversy on the merits. *Id.* at 192–93. The panel split in determining whether appellants had standing to challenge MIFPA, with the majority finding that appellants had standing because they suffered an injury in fact. *Id.* at 193–94. The court of appeals further concluded that MIFPA is subject to the rational-basis test, *id.* at 197–98, and that the statute is constitutional because it survives rational-basis review, *id.* at 198, 205–10 (Reyes, J., concurring in part and dissenting in part) (disagreeing with the court of appeals that appellants had standing to challenge the statute, but agreeing that if it were to reach the issue, the statute is constitutional).

Appellants petitioned our court for further review of the third and fourth issues, concerning the good-cause exceptions and the constitutionality of MIFPA and ICWA, which we granted. Although appellants sought (and we granted) review of the issue of the good-cause exceptions, they abandoned it before our court.[9] Regarding MIFPA's

---

[8] Although appellants challenged the constitutionality of both ICWA and MIFPA, the court of appeals considered only the constitutionality of MIFPA "because the district court relied on MIFPA's placement preferences in denying appellants' motion to stay the change of placement." *L.K.*, 9 N.W.3d at 194.

[9] Specifically, appellants did not address the issue in their briefing, and when asked at oral argument, they acknowledged that they had abandoned it.

constitutionality, as explained further below, we conclude that the court of appeals erred by addressing that issue, and accordingly, we vacate that part of the court of appeals' decision.

### *July 24, 2024 Order Reconsidering Appellants' Motions on Remand*

No petition for review was sought from the court of appeals' remand order on appellants' permissive intervention motion and third-party custody petition. The district court took up these issues again in an order dated July 24, 2024.[10] In that order, the district court noted that the twins continued to do well in M.L.'s care, and that the mother had filed an amended affidavit indicating her support for the children's placement with M.L. The district court then considered whether appellants permissive intervention was in the best interests of the children in terms of intervention and concluded that it was not. It reasoned that although appellants were seasoned foster parents and had genuine love for the twins, their knowledge of the twins' physical, medical, and emotional needs was stale given that the twins had not been in appellants' home for nearly one year. The court expressed concern that appellants' actions "indicate[d] a disregard for or a lack of understanding about the importance of" the twins' tribal heritage. It pointed to appellants' petition for third-party custody over the Tribe's objections and their claims that ICWA and MIFPA are unconstitutional as indications that their participation in the case would be a disadvantage. It also noted that appellants had allowed the mother to visit the children on numerous

---

[10] Appellants' petition for further review was filed on June 12, 2024. We granted the petition for further review on July 2, 2024, after the district court held a hearing on June 21, 2024 based on the court of appeals' remand instructions, but before the district court issued its order on July 24, 2024.

occasions without the County's knowledge and had urged the mother to support their petition for custody against her better judgment.

In the same order, the district court reconsidered appellants' petition for third-party custody in the CHIPS case. The court first determined that the petition was procedurally improper. Relying on *Stern*, 839 N.W.2d at 98, 104, the district court found that here, "the third-party custody petition could not have been filed in family law court." The district court also concluded, however, that "[t]here is no right to file a third-party petition for custody within a juvenile protection matter" because Minnesota Rules of Juvenile Protection Procedure 33.01, 34.02, and 35 are "an exhaustive list of the procedures available to an individual who seeks a status from which to assert a custody claim for the children or participate in a juvenile protection matter." And the court further concluded that a third-party custody petition would be "impractical" in a juvenile protection proceeding because, among other things, "there is simply no reason to risk a third-party custody petition disrupting a child protection matter where there are multiple avenues for a qualified individual to become a party or participant within a juvenile protection matter under the juvenile protection rules and statutes."

In the alternative, the district court stated that even if its procedural decision were to be reversed, appellants would still not be entitled to an evidentiary hearing on the merits, and the petition would fail for that reason. In reaching that conclusion, the court considered twelve statutory factors under Minnesota Statutes section 257C.04, subdivision 1 (2024), to determine whether appellants proved by a preponderance of the evidence that it is in the children's best interests to be in their custody. The court weighed those factors and

concluded that appellants' petition and affidavit did not allege sufficient facts to prove that they would satisfy the criteria to be considered interested third parties and that appellants' custody would be in the children's best interests. Therefore, the court concluded that appellants could not satisfy the test laid out in *Lewis-Miller v. Ross*, 710 N.W.2d 565, 570 (Minn. 2006), which only entitles a third party to an evidentiary hearing when the facts alleged, if proven, would satisfy section 257C.03, subdivision 7. The court ultimately dismissed appellants' third-party custody petition and denied their motion for permissive intervention in the existing CHIPS proceeding.

### Second Appeal of District Court's Order

After the district court issued its order, appellants moved in this court for a stay of further district court proceedings, including the stay of a pending motion by Red Lake Nation to transfer the CHIPS case to Tribal court. *See* Minn. R. Juv. Prot. P. 31.01, subd. 1 ("At any stage in the proceedings, an Indian child's parent, Indian custodian, or tribe may request transfer of the juvenile protection matter to the Indian child's tribe . . . ."). We granted the stay in part, prohibiting the district court from transferring this matter to tribal court until we ordered the stay lifted.

Appellants also filed a second appeal, No. A24-1296, contesting the district court's July 24, 2024 order denying their intervention motion and dismissing their third-party custody petition. The court of appeals stayed that appeal pending oral argument before this court on the first appeal. On October 7, 2024, immediately following oral argument with our court on the first appeal, appellants filed a petition for accelerated review in this court as to the second appeal, which we granted. Appellants raised four new issues in the second

18

appeal: (1) whether the district court violated appellants' constitutional rights to petition the government by prohibiting their intervention in the CHIPS case based on their good-faith challenges to existing law; (2) whether the district court erred by denying appellants' motion for permissive intervention under Minnesota Rule of Juvenile Protection Procedure 34.02; (3) whether the district court erred by denying appellants an evidentiary hearing to establish interested-third-party status pursuant to Minnesota Statutes section 257C.03 (2024); and (4) whether the district court erred in dismissing appellants' third-party custody petition. We heard oral argument on these four issues on April 1, 2025. We have consolidated the two appeals for the purposes of this opinion.

## ANALYSIS

We address in this opinion the issues raised in both appeals. The only issue remaining from the first appeal is the constitutionality of ICWA and MIFPA.[11] That issue is an important one that justified our grant of review of this case. But that issue can be raised only by a proper party to the CHIPS proceedings. Accordingly, a threshold question in these consolidated appeals is whether appellants were proper parties to the CHIPS case. Appellants sought party status in two ways: by seeking permissive intervention and by

---

[11] The other question appellants raised in their first appeal is whether the district court erred in finding that there was not good cause to deviate from MIFPA's temporary out-of-home placement preferences when it placed the twins with their maternal relatives rather than with appellants. *See* Minn. Stat. § 260.773, subd. 10(2); 25 U.S.C. § 1915(b). Because appellants abandoned this issue at oral argument in their first appeal and in their briefing, we do not address it. *See Lang v. Chicago & N.W. Ry. Co.*, 295 N.W. 57, 62 (Minn. 1940) ("Assignments of error made without any argument or discussion whatever must be deemed abandoned."); *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) ("This issue was not argued in the briefs and accordingly must be deemed waived.").

filing a petition for third-party custody. The district court denied appellants party status under both routes. Considering each route in turn, we first conclude that the district court did not abuse its discretion when it denied appellants' permissive intervention motion. We then turn to the question of whether the district court erred when it dismissed appellants' petition for third-party custody filed in juvenile court, and we conclude it did not. Because we affirm the district court's decisions on both issues, we hold that appellants are not parties in the twins' CHIPS case.

Accordingly, we do not address appellants' equal protection arguments—on which we granted review—because appellants are not parties to the case and because the district court's decision on intervention was not predicated on the foster parents' tribal eligibility status. We further conclude that the court of appeals erred by addressing appellants' equal protection arguments given that doing so was not necessary to resolve the orders before it on appeal, and we therefore vacate its opinion as it pertains to the constitutionality of ICWA and MIFPA. We now explain the reasoning for our decision.

I.

A.

The first question before us is whether the district court erred in denying appellants' motion for permissive intervention into the twins' open CHIPS case. We review a district court's denial of permissive intervention under an abuse of discretion standard. *Norman v. Refsland*, 383 N.W.2d 673, 676 (Minn. 1986).

1.

We begin with an overview of the juvenile protection statutes, as relevant to this case. "The paramount consideration in all juvenile protection proceedings is the health, safety, and best interests of the child." Minn. Stat. § 260C.001, subd. 2(a) (2024).[12] These proceedings exist to "identify[] and protect[] abused children." *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 134 (Minn. 2014). Once any child is adjudicated in need of protection or services, *see* Minn. Stat. § 260C.141 (2024), the child's custody is vested in the State, and simultaneous legal proceedings begin along two separate tracks pursuant to Minnesota Statutes sections 260.012(a) (2024) and 260C.223, subdivision 1(b) (2024). The first track requires the State's social services agency to "eliminate the need for removal and to reunite the child with the child's family at the earliest possible time"—that is, it must prioritize reunification. Minn. Stat. § 260.012(a). The second track is "concurrent permanency planning" and requires the agency to "develop an alternative permanency plan while making reasonable efforts for reunification." Minn. Stat. § 260C.223, subd. 1(b). ICWA and MIFPA apply to both tracks and also require the State to make "active efforts"

---

[12]     In 2024 and 2025, after the twins' CHIPS action was commenced in district court, the Legislature amended MIFPA and the child welfare statutes. *See, e.g.*, Act of May 18, 2024, ch. 115, art. 17, §§ 1–49, 2024 Minn. Laws 1544, 1685–708 (codified as amended at Minn. Stat. §§ 260.751–.835 (2024)); *id.*, ch. 115, art. 17, § 51, subd. 1(n), 2024 Minn. Laws at 1711 (codified at Minn. Stat. § 260C.178 (2024)); *id.*, art. 18, §§ 36–39, 2024 Minn. Laws at 1737–46 (codified as amended at Minn. Stat. §§260C.212–.515); Act of June 14, 2024, ch. 3, art. 10, §§ 17–30, 2025 Minn. Laws 1st Spec. Sess. 1730, 1732–47 (codified as amended at Minn. Stat. §§ 260C.178–.452). These amendments are not applicable to this case and do not change our analysis.

to prevent the breakup of the Indian family. Minn. Stat. § 260C.221, subd. 1(b) (2024); 25 U.S.C. § 1912(d).

For the purposes of concurrent permanency planning, child welfare law requires consideration of the "availability of relatives and other concerned individuals to provide . . . permanent placement . . . ." Minn. Stat. § 260C.223, subd. 2(3) (2024). The statute imposes an ongoing responsibility on the social services agency to "conduct a relative search . . . and engage relatives in case planning and permanency planning," "consider placing the child with relatives" in a specific order, and "place siblings . . . in the same home." Minn. Stat. § 260.012(e)(3)–(5) (2024). The County conducted a relative search and identified R.F. and then M.L. as suitable possibilities for the twins' future permanent placement.

Once a CHIPS petition is filed and children are placed in out-of-home care—as the twins were when they were placed in appellants' home—the social services agency is required to create a temporary out-of-home placement plan.[13] Minn. Stat. § 260C.212, subd. 1. For non-Indian children, the temporary out-of-home placement hierarchy prioritizes "placement with relatives in the following order":

> (1) with an individual who is related to the child by blood, marriage, or adoption, including the legal parent, guardian, or custodian of the child's sibling; or
>
> (2) with an individual who is an important friend of the child or of the child's parent or custodian, including an individual with whom the child has resided

---

[13] A temporary out-of-home placement plan governs, among other things, where a child will stay while the CHIPS matter is adjudicated and family reunification efforts are pursued. *See* Minn. Stat. § 260C.212, subd. 1(c).

or had significant contact or who has a significant relationship to the child or the child's parent or custodian.

*Id.*, subd. 2(a). Indian children's temporary out-of-home placement preferences are governed by ICWA and MIFPA. *See* 25 U.S.C. § 1915(b); Minn. Stat. §§ 260C.212, subd. 2(a), 260.773 (2024). "[T]he Indian child shall be placed in the least restrictive setting which most approximates a family and in which the Indian child's special needs, if any, may be met." Minn. Stat. § 260.773, subd. 1. Preference is to be given to a placement with:

(1) a noncustodial parent or Indian custodian;

(2) a member of the Indian child's extended family;

(3) a foster home licensed, approved, or specified by the Indian child's Tribe;

(4) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or

(5) an institution for children approved by an Indian Tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.

*Id.*, subd. 3. ICWA and MIFPA also enumerate several good-cause exceptions to deviate from the enumerated placement preferences for Indian children. *See* 25 U.S.C. § 1915(b); Minn. Stat. § 260.773, subd. 10(2). The structure of CHIPS proceedings is for the child to live in the temporary out-of-home placement until either family reunification is successful—which is the preferred option—or there is an adoption, transfer of custody, or other permanency placement. *See* Minn. Stat. § 260.012 (2024).

The Minnesota Rules of Juvenile Protection Procedure specifically list who may be a party in a CHIPS matter. The parties that "shall" be included are the GAL; the legal custodian; for Indian children, the child's parents, the child's Indian custodian, and the

23

child's tribe; and the petitioner, which here, is the County. Minn. R. Juv. Prot. P. 32.01, subd. 1(a)–(d). The rule further provides that any person who intervenes pursuant to Rule 34, is joined pursuant to Rule 35,[14] or "is deemed by the court to be important to a resolution that is in the best interests of the child," shall also be a party to the juvenile protection matter. *Id.*, subd. 1(e)–(g). As to intervention, Rule 34.01 provides the child who is the subject of the CHIPS matter, grandparents, non-custodial parents, and social services agencies intervention as of right. Minn. R. Juv. Prot. P. 34.01. And Rule 34.02 allows for permissive intervention of "[a]ny person" if intervention is in the best interests of the child. Minn. R. Juv. Prot. P. 34.02. As for foster parents, Rule 33.02, subdivision 2, states that "any foster parent . . . shall have a right to be heard in any hearing regarding the child" but "does not require that a foster parent . . . be made a party to the matter." Minn. R. Juv. Prot. P. 33.02, subd. 2. Appellants moved for permissive intervention in the twins' case under Rule 34.02.

2.

On appeal, appellants assert that the district court abused its discretion when it denied their permissive intervention motion for the second time. Specifically, they allege that the district court neglected to weigh a key factor indicating that appellants' intervention would be in the best interests of the children, namely that they had familiarity with the twins' medical needs. They also assert that the district court did not give sufficient weight

---

[14] The court is permitted to "join a person or entity as a party if the court finds that joinder is: (a) necessary for a just and complete resolution of the matter; and (b) in the best interests of the child." Minn. R. Juv. Prot. P. 35.

to their claim that judicial economy is best served by allowing them to permissively intervene, rather than pursuing separate litigation—even if their intervention might delay or broaden the proceedings. All four respondent parties argue that the district court did not abuse its discretion because the juvenile rules provide the district court with discretion to deny an intervention that does not serve the children's best interests in terms of intervention.

Rule 34.02 does not specify what the "best interests" are in terms of intervention. *See* Minn. R. Juv. Prot. P. 34.02 ("Any person may be permitted to intervene as a party if the court finds that such intervention is in the best interests of the child."); *cf.* Minn. Stat. § 260C.212, subd. 2(b) (listing 10 best-interests factors in terms of *placement*).[15] The overarching question in deciding a permissive intervention motion is whether the individual's participation as an intervenor "is in the best interests of the child." *See* Minn. R. Juv. Prot. P. 34.02. We rely on the district court's sound discretion to answer that question. *See Valentine v. Lutz*, 512 N.W.2d 868, 871 (Minn. 1994) ("We believe the decision to allow persons to intervene other than those allowed by our rule or statute is one that should remain within the sound discretion of the trial court."). In answering that

---

[15]    The court of appeals has addressed this issue and has not identified specific best-interests factors that should guide a Rule 34.02 permissive intervention analysis. *See In re Welfare of Child. of M.L.S.*, 964 N.W.2d 441, 452 (Minn. App. 2021) ("Rule 34.02 does not specify what circumstances a district court should consider in determining the best interests of the child in granting or denying intervention."); *L.K.*, 9 N.W.3d at 185 n.1 (recognizing that *M.L.S.* did not "endorse or prescribe *any* statutory factors for determining the best interests of a child on a motion for permissive intervention"). Likewise, the parties before us do not urge us to adopt any specific factors, and we decline to do so.

question here, we hold that the district court did not abuse its discretion in denying appellants' permissive intervention motion.

Our decision in *Valentine v. Lutz*—affirming a district court's decision to deny foster parents' intervention in a CHIPS proceeding—shows the extent to which we defer to the district court in this context. *Id.* at 871. In *Valentine,* a social services agency was granted temporary custody of J.A.D. in a CHIPS proceeding. *Id.* at 869. The agency temporarily placed J.A.D. with foster parents due to J.A.D.'s significant medical needs. *Id.* J.A.D. remained with the foster parents for over three years. *Id.* At that point, the biological mother requested that the agency consider permanent placement and custody with the mother's sister and brother-in-law. *Id.* After visitation and conducting a home study at the relatives, the agency informed the foster parents of J.A.D.'s impending move to his relatives. *Id.* The foster parents responded in several ways, including moving for the right to intervene in the CHIPS proceedings involving J.A.D. and for a transfer of his custody to them. *Id.* at 869–70. The district court denied both motions. *Id.* at 870.

On appeal, the foster parents argued the court abused its discretion by denying their permissive intervention motion. *See id.* at 871. We noted that "[i]n certain circumstances, it may be appropriate for a trial court to allow foster parents to intervene, either as parties to the action or on a more limited basis." *Id.* We also pointed out that the foster parents had "provide[d] excellent care for a child [who had special medical needs] for an extended period, [and] may have information which can assist a trial court in making its decisions in a CHIPS proceeding[]." *Id.* However, we ruled against the foster parents and affirmed the denial of the motion to intervene because "the decision to allow persons to intervene other

26

than those allowed by our rule or statute is one that should remain within the sound discretion of the trial court." *Id.*

That same analysis guides our decision here. There is no dispute that appellants provided excellent care to the twins while they were living in appellants' foster home, which the district court acknowledged in its order denying permissive intervention. And as we acknowledged in *Valentine*, foster parents often have information about the child that is helpful to a district court in making its placement decisions, which weighs in favor of their intervention. *Id.* at 871 ("Foster parents . . . may have information which can assist a trial court in making its decisions in a CHIPS proceeding[]."). But the discretion properly lies with the district court to determine whether that information would be helpful. Moreover, as respondents point out, Minnesota's child custody framework—which governs all juvenile protection cases of non-Indian and Indian children alike—mandates individualized consideration of a child's best interests. *See* Minn. Stat. § 260C.212. And for all children, the juvenile protection statutes require "preserv[ing] and strengthen[ing] the child's *family ties* whenever possible and in the child's best interest[.]" *Valentine*, 512 N.W.2d at 871 (emphasis added) (citation omitted) (internal quotation marks omitted).

Here, after the court of appeals' remand order, the district court conducted a determination of the twins' best interests specific to the question of intervention. Specifically, the district court considered both the advantages and the disadvantages that might be realized if appellants were made parties to the CHIPS case. As one advantage, it considered appellants' history with the twins—including that they "attended to the children's physical, medical, and emotional needs tirelessly"—which might have "offered

27

insight into the children's care, such as coping strategies and schedules that proved successful." As another advantage, it included the fact that appellants "are well seasoned parents" who "genuinely care about the children and have an attachment to them."

But the district court also considered the possible disadvantages of including appellants as parties. Notably, the district court was "concerned" that appellants being given party status would "unnecessarily encumber[]" the CHIPS proceedings, particularly because the court "has every reason to believe [appellants] would contest any placement or action taken in regard to the children other than placement with" appellants. And although the district court acknowledged that appellants "expressed an interest in supporting the children with their indigenous identity," it found that their "actions indicate a disregard for or a lack of understanding about the importance of that heritage," and so "their participation in this case would be a disadvantage."[16] Finally, the district court found that appellants' actions towards the twins' mother raised questions about their judgment, given that she was "seemingly not in a place at that time to offer a clear judgment regarding the children's placement."

Ultimately, the district court concluded that the disadvantages of appellants being permitted to intervene "far outweigh the possible advantages." The district court reasoned that appellants' familiarity with the twins' medical history and developmental progress—which appellants asserted should be counted in their favor—is information that could be

---

[16] Appellants argue that the district court disregarded their "commitment to—and plan for—raising the twins with a strong indigenous identity." But the district court acknowledged that they "expressed an interest in" doing so.

28

provided to the court directly by the medical providers and the social workers' reports.  It

also emphasized that the CHIPS action would be over-burdened if appellants intervened as

parties because the twins' best interests were adequately represented by the GAL, the Tribe,

and their mother.  Although the court considered the information appellants provided to the

court in support of their motion to intervene, it did not, on balance, find their participation

to be helpful in the CHIPS proceeding because the information they could provide was

largely redundant.  And the district court expressed concern that appellants' "strong

attachment to the children has created a bias that would only hinder and harm the

progression of the children's protection proceeding," because "they could not see the value

in any other placement for the children."[17]  The district court denied the motion for

permissive intervention for these reasons.

---

[17]     Appellants claim that it was "non-sensical" for the district court to conclude that, as appellants put it, "because of Appellants' love and commitment to the twins, it is not in the twins' best interests for them to intervene."  Appellants' argument is unpersuasive. Although the district court did not doubt that appellants "genuinely care about the children and have an attachment to them," the court concluded that attachment would, on balance, lead to unnecessary delay in the resolution of the proceedings.  As appellants acknowledge, the purpose of CHIPS proceedings is to serve the best interests of the children by reuniting them with their family or, failing that, to prepare them for a permanent placement with relatives or other concerned individuals.  It was not an abuse of discretion for the district court to conclude that appellants' "strong attachment to the children" would not serve those interests based on its finding that "they could not see the value in any other placement for the children" and "would contest any placement or action taken in regard to the children other than placement with them." *See In re Welfare of Child of R.K.*, 901 N.W.2d 156, 162 (Minn. 2017) (holding that juvenile protection proceedings "require an expeditious resolution of permanency because we will not allow children to linger in uncertainty"); *In re Welfare of J.R., Jr.*, 655 N.W.2d 1, 5 (Minn. 2003) (stating that "child protection cases . . . in particular need to be expeditiously handled").

In reaching its decision, the district court did not clearly "mak[e] findings unsupported by the evidence," nor did it "improperly apply[] the law." *In re Custody of N.A.K.*, 649 N.W.2d 166, 174 (Minn. 2002). The decision to deny a nonparty's intervention—including that of the foster parents—is within the district court's purview. *See Valentine*, 512 N.W.2d at 871. Moreover, we note that the same district court judge has presided over this matter since 2022 and is intimately familiar with the parties, the appellants, and the children. We therefore hold that the district court did not abuse its discretion by denying appellants' permissive intervention motion in the twins' existing CHIPS case in juvenile court.

B.

Appellants also argue that the district court violated their First Amendment right to petition the government when it denied their intervention in the CHIPS proceedings. Specifically, appellants point to the district court's statement in its order denying their permissive intervention that "motion[ing] [the district] Court to find ICWA and MIFPA unconstitutional" gave support to its finding that "their participation in this case would be a disadvantage." The GAL and the County disagree and argue that the district court did not infringe on appellants' rights. We agree with respondents.

Appellants assert that the district court violated their right to petition the government by considering their assertion of their constitutional challenge to ICWA and MIFPA as among the reasons to deny intervention. "[T]he Petition Clause [of the First Amendment] protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri,*

30

564 U.S. 379, 387 (2011); *see* U.S. Const. amend. I ("Congress shall make no law . . . abridging the . . . right of the people . . . to petition the Government for a redress of grievances."); *Virginia v. Black*, 538 U.S. 343, 358 (2003) (applying the First Amendment to the states through the Fourteenth Amendment). We take the protection of that right seriously.

Appellants' specific argument is that the district court retaliated against them by using their challenges to ICWA and MIFPA as factors that weighed against them in their permissive intervention motion. "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" on the basis of their constitutionally protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). In some circumstances, therefore, a cause of action may exist when government actors exercise authority in retaliation for exercising the right to speak or to petition the government. *See, e.g.*, *id.* (alleging criminal prosecution in retaliation for speech); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 281–87 (1977) (alleging employment action in retaliation for speech); *Goff v. Burton*, 7 F.3d 734, 736–38 (8th Cir. 1993) (alleging transfer of prisoner in retaliation for filing legal action); *Ligons v. Hagen*, No. A04-1851, 2005 WL 2128619, at *4 (Minn. App. Sep. 6, 2005) (alleging disciplinary action against prisoner in retaliation for exercising "right of access to the courts"). To have a cause of action, there must be a causal connection between the exercise of the constitutional right and the retaliatory action. *Hartman*, 547 U.S. at 260. "If there is a finding that retaliation was not the but-for cause [of the government action], . . . the claim fails for lack of causal connection between unconstitutional motive and resulting harm,

31

despite proof of some retaliatory animus in the official's mind." *Id.* That is because an official action "colored by some degree of bad motive" may not merit relief "if that action would have been taken anyway." *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998), and *Mt. Healthy*, 429 U.S. at 285–86). The exercise of the protected right must do more than merely "play[] a part" in the adverse action because there is no constitutional violation if the government actor "would have reached the same decision . . . even in the absence of" the exercise of that right. *Mt. Healthy*, 429 U.S. at 285, 287.

Appellants have not drawn to our attention any decision directly supporting the principle that a court violates the First Amendment when it considers a prospective intervenor's presentation of a good-faith legal argument in the lawsuit as a basis for denying intervention. But, assuming without deciding that such principle is valid, we conclude that there was no violation here, for two reasons.

First, it is not clear that the district court's decision denying intervention reflects retaliatory animus stemming from appellants' exercise of their right to challenge the constitutionality of ICWA and MIFPA. The district court identified two possible advantages, and four possible disadvantages, to making appellants parties to the CHIPS proceeding. One of the disadvantages was that, in the district court's view, appellants had "a disregard for or a lack of understanding about the importance of [the twins' indigenous] heritage." And in support of *that* conclusion, the district court focused its attention on actions that it perceived as denigrating "the children's tribal identity," as evidenced by their opposition, on multiple occasions, to the actions of the Tribe. It was in that context that it mentioned that appellants "motioned this Court to find ICWA and MIFPA

32

unconstitutional." In short, it appears that the district court considered appellants' challenge to ICWA and MIFPA to be indicative of appellants' "attitude toward the importance of the children's tribal identity." We do not perceive that determination by the district court to be evidence of retaliation.

Second, even assuming the district court's finding regarding appellants' attitude toward the twins' indigenous heritage was inappropriately affected by their challenge to ICWA and MIFPA, its order demonstrates that appellants' attitude toward tribal matters was not the decisive factor in the district court's analysis as required for relief in any claim of retaliation for protected speech. Instead, the district court emphasized its concern that appellants' "strong attachment to the children has created a bias that would only hinder and harm the progression of the children's protection proceeding," because "they could not see the value in any other placement for the children." Such a concern strongly supports the district court's conclusion that it would not be in the children's best interests for appellants to be parties in the CHIPS proceeding.

In short, we hold that the district court properly conducted a robust analysis of the best interests of the child as to intervention in this case, consistent with what Rule 34.02, the child custody statutes, and our case law require. We are confident that the district court's decision was guided by the applicable law, not by appellants' decision to challenge ICWA's and MIFPA's constitutionality.

\* \* \*

In sum, the district court did not abuse its discretion when it denied appellants' permissive intervention motion. Accordingly, appellants are not parties to the CHIPS action.

II.

Next, we turn to the issue of whether the district court erred by dismissing appellants' petition for third-party custody, which they filed into the existing CHIPS case in juvenile court. We conclude that such a petition is non-cognizable in juvenile court and that, even if we were to construe appellants' third-party custody petition as a petition for a transfer of permanent legal and physical custody—as it should be properly considered in juvenile court—it was not error for the district court to dismiss it without an evidentiary hearing because appellants are not parties to the CHIPS action. Our analysis follows.

A.

After the remand order from the court of appeals, the district court addressed the procedural question of whether appellants were allowed to file a third-party petition for custody within a juvenile protection proceeding, rather than in a separate case file in family court. The court dismissed the third-party petition for custody without holding an evidentiary hearing. Appellants assert that the district court erred by dismissing the petition without holding an evidentiary hearing. We disagree.

The question of whether the district court erred in dismissing the petition involves the interpretation and application of the relevant statutes and the Minnesota Rules of Juvenile Protection Procedure. We review this question de novo. *In re Estate of Figliuzzi,*

979 N.W.2d 225, 231 (Minn. 2022) ("We review the interpretation and application of statutes and the rules of . . . procedure de novo."). The statute governing this CHIPS proceeding is Minnesota Statutes chapter 260C, which the Legislature has directed "may be cited as the juvenile protection provisions of the Juvenile Court Act." Minn. Stat. § 260C.001, subd. 1(a) (2024). Minnesota Statutes section 260C.101, subdivision 1 (2024), states that "[t]he juvenile court has original and exclusive jurisdiction in proceedings concerning any child who is alleged to be in need of protection or services." Subdivision 2, in turn, extends the juvenile court's "original and exclusive jurisdiction" to "[o]ther matters relating to children." *Id.*, subd. 2 (2024).

As the court of appeals reasoned in *Stern v. Stern*, the statute provides a clear and unambiguous grant of jurisdiction to the juvenile court over any permanency matters pertaining to children who are subject to protection proceedings. 839 N.W.2d at 100 (citing Minn. Stat. § 260C.101, subds. 1, 2); *see also* Minn. Stat. § 260C.001, subd. 3(2) (2024) ("The purpose of the laws relating to permanency . . . is to ensure that . . . if placement with the parents is not reasonably foreseeable, to secure for the child a safe and permanent placement . . . ."). We conclude that *Stern* correctly states the law. Because the twins are subject to protection proceedings, the juvenile court has exclusive jurisdiction over the twins' placement. Therefore, appellants' petition seeking permanent custody of the twins

35

invokes the jurisdiction of the juvenile court and would need to be filed in the existing juvenile court action.[18]

The juvenile protection provisions of the Juvenile Court Act provide that when an individual seeks permanent custody of a child in juvenile court, the proper procedural action is to file a petition for a transfer of legal and physical custody. Minn. Stat. § 260C.515, subd. 4(a) (2024) ("The court may order a transfer of permanent legal and physical custody to: (1) a parent . . . ; or (2) a fit and willing relative . . . ."). In contrast, the procedural mechanism used by appellants here, a third-party custody petition, is not contained within the juvenile protection provisions of the Juvenile Court Act and is thus inapplicable to this juvenile court proceeding. *See* Minn. Stat. § 257C.03, subd. 1 (a "third-party child custody proceeding may be brought by an individual other than a parent by filing a petition seeking custody[.]").

This conclusion is supported by *Stern*. In *Stern*, the grandmother-petitioner filed a petition for de facto custody in family court,[19] seeking permanent custody of her grandchildren under Minnesota Statutes section 257C.03, subdivision 6 (2012). *Stern*,

---

[18] The court of appeals directed that appellants may file their third-party custody petition in a new case file if, upon remand, the district court determined that it should not have been filed in the pending CHIPS case. *L.K.*, 9 N.W.3d at 188. That command was erroneous: there may be only one pending juvenile-court matter regarding a particular child.

[19] *See* Minn. Stat. § 257C.01, subd. 2(a) (2024) (defining "[d]e facto custodian" as "an individual who has been the primary caretaker for a child who has, within the 24 months immediately preceding the filing of the petition, resided with the individual without a parent present and with a lack of demonstrated consistent participation by a parent" for a statutorily-defined period of time).

839 N.W.2d at 98. However, a CHIPS action involving the grandchildren had already been opened in juvenile court, and "the children were under the protective custody of the county." *Id*. And the grandmother had already filed a petition in the CHIPS proceeding under Minn. Stat. § 260C.515, subd. 4 (2012). *Stern*, 893 N.W.2d at 98. The family court dismissed the petition for de facto custody, concluding that it did not have concurrent jurisdiction over that petition. *Id.* at 99.

The court of appeals in *Stern* conducted a well-reasoned statutory interpretation analysis of the child welfare statutes and concluded that the juvenile court maintained exclusive original jurisdiction over the children because the CHIPS action was already pending. *Id.* at 99–104. The court of appeals observed that the Juvenile Court Act "contains numerous provisions that allow relatives and private parties to seek permanent legal and physical custody of children in CHIPS and permanency proceedings," *id.* at 104, including a petition to transfer permanent legal and physical custody under Minnesota Statutes section 260C.515, subdivision 4 (2012), *id.* at 101. Because the grandmother had *already filed* such a petition in juvenile court, the court of appeals concluded that the family court was without concurrent jurisdiction over the grandmother's petition for de facto custody and affirmed the dismissal of that petition in family court. *Stern*, 839 N.W.2d at 104.

We apply the same reasoning here. The juvenile court has original and exclusive jurisdiction in proceedings, such as those here, concerning any child who is alleged to be in need of protection or services. *See* Minn. Stat. § 260C.101, subd. 1. And those juvenile court proceedings are governed by Minnesota Statutes chapter 260C, which contains the

37

juvenile protection provisions of the Juvenile Court Act. *See* Minn. Stat. § 260C.001, subd. 1(a). Thus, once a CHIPS proceeding has begun in juvenile court, and while juvenile court proceedings remain pending, the juvenile court has exclusive jurisdiction and the appropriate pathway to transfer permanent custody of a child is a motion to transfer permanent legal and physical custody under section 260C.515, subdivision 4. A petition for third-party custody under section 257C.03, subdivision 1, is non-cognizable in juvenile court.[20] Because appellants intended to acquire legal and physical custody of the twins, any filing in juvenile court should have been construed as a petition for transfer of legal and physical custody under section 260C.515—the juvenile protection statute—rather than a third-party custody petition.

Critically, both the relevant statute and the Rules of Juvenile Protection Procedure limit who may bring a petition for transfer of legal and physical custody. Minnesota Statutes § 260C.515, subdivision 4(d), states that "[a]nother *party* to the permanency

---

[20] Appellants argue that, because Minnesota Statutes section 257C.03, subdivision 1(a), allows a third-party custody proceeding to be brought "[i]n a court of this state with jurisdiction to decide child custody matters," and because the juvenile court has jurisdiction over proceedings "concerning any child" who is the subject of a CHIPS petition, Minn. Stat. § 260C.101, subd. 1, their third-party custody proceeding was properly brought in juvenile court. We disagree. Although the juvenile court had *jurisdiction* over appellants' motion, that does not necessarily mean that it was properly brought before that court. Permanency proceedings in juvenile court are governed by Minnesota Statutes section 260C.503 to 260C.521. *See* Minn. Stat. § 260C.101, subd. 2(2). Those procedures, not those in chapter 257C, are the appropriate ones for proceedings in juvenile court. Given the "numerous provisions that allow relatives and private parties to seek permanent legal and physical custody of children in CHIPS and permanency proceedings," *Stern*, 839 N.W.2d at 104, we are unpersuaded that the Legislature intended, by its language in Minn. Stat. § 257C.03, subd. 1(a), to authorize third-party and de facto custody petitions in juvenile court.

proceeding regarding the child may file a petition to transfer permanent legal and physical custody to a relative." (Emphasis added.) Similarly, Minnesota Rule of Juvenile Protection Procedure 54.03, subdivision 1, which applies to such petitions, states: "The county attorney may file a permanent placement petition in juvenile court to determine the permanent placement of a child. . . . [A]nd *any other party* may seek only termination of parental rights or transfer of permanent legal and physical custody to a relative."[21] (Emphasis added.) Both the statute and the rule therefore contemplate that petitions for custody may only be brought by parties to the CHIPS proceeding.

In turn, the Minnesota Rules of Juvenile Protection Procedure govern who is automatically included and who may be joined as a party in a juvenile court proceeding. *See* Minn. R. Juv. Prot. P. 32.01, subd. 1. Rule 35 allows the court, in its discretion, to join any party if it is "necessary for a just and complete resolution of the matter" and it is "in the best interests of the child."[22] And Rule 33.01(i), provides that "any other person who

---

[21]    Appellants argue in their second reply brief that they should be allowed to file a petition to transfer permanent legal and physical custody to appellants as qualified "relative[s]" under Minnesota Statutes section 260C.515, subdivision 4(d), and section 260C.007, subdivision 27 (2024). The GAL moved to strike this argument as outside the scope of the appellate record. We consider "only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Maslowski v. Prospect Funding Partners LLC*, 994 N.W.2d 293, 302 (Minn. 2023). Because the district court did not consider a motion under this statute and because the other parties did not have a chance to address the argument, we grant the GAL's motion to strike. *See also* Minn. R. Civ. App. P. 128.02, subd. 3 (providing that an appellant's "reply brief must be confined to new matter raised in the brief of the respondent").

[22]    Additionally, Minnesota Rule of Juvenile Protection Procedure 34 provides that the child, grandparents, non-custodial parents, and responsible social services agencies may

is deemed by the court to be important to a resolution that is in the best interests of the child" may participate in the juvenile protection matter.[23]  Foster parents are not explicitly mentioned in any of these rules.  Instead, Rule 33.02, subdivision 2, states that "any foster parent . . . shall have a right to be heard in any hearing regarding the child," but "does not require that [they] . . . be made a party to the matter."  In sum, foster parents such as appellants have no right to be joined as a party to a CHIPS proceeding unless the court finds it is in the best interests of the child in terms of intervention.  Nonparty participants, including "current foster parents," Minn. R. Juv. Prot. P. 33.01(g), are entitled to "notice," "legal representation," "being present at hearings," and "offering information at the discretion of the court," Minn. R. Juv. Prot. P. 33.02, subd. 1, but only parties may "bring motions before the court," Minn. R. Juv. Prot. P. 32.02(e).[24]

After considering these rules, the district court found that appellants had no authority to file a permanency petition in the existing matter because they are not parties. It reiterated that appellants' joinder would provide no benefit to the court in resolving the CHIPS matter.  We agree with the district court's reasoning and hold that appellants are

intervene as a matter of right, while any person may permissively intervene if the court finds intervention is in the child's best interests.  Minn. R. Juv. Prot. P. 34.01, 34.02.

[23]     Minnesota Rule of Juvenile Protection Procedure 32.01, subdivision 1(g) also provides that persons deemed by the court to be important to a resolution shall be made a party to the juvenile protection matter.

[24]     And Minnesota Statutes section 260C.515, subdivisions 4(c)–(d), is likewise clear that, aside from "[t]he responsible social services agency," only "[a]nother party to the permanency proceeding regarding the child may file a petition to transfer permanent legal and physical custody."

foreclosed from filing a permanency petition in the CHIPS proceedings because they are not parties.[25]

B.

Appellants also argue that they are entitled to an evidentiary hearing to establish their interested-third-party status on the merits under section 257C.03, subdivision 7. In *Lewis-Miller v. Ross*, we considered whether a petitioner in a child-custody proceeding was entitled to an evidentiary hearing to determine whether she had established interested-third-party status for the purpose of acquiring custody of her late sister's children. 710 N.W.2d at 568. We ultimately held that in order to be entitled to a hearing on the third-party custody petition, the petitioner must allege facts that, if proven, would satisfy the criteria of the interested-third-party custody statute—section 257C.03, subdivision 7. *Lewis-Miller*, 710 N.W.2d at 570.

---

[25] The court of appeals concluded, without analysis and in response to the GAL's alternate argument for affirmance, that Minnesota Rule of Juvenile Protection Procedure 32.02 "does not compel [the] result" that "a person must be a party to a pending CHIPS case before filing a third-party-custody petition in that case." *L.K.*, 9 N.W.3d at 188. That ruling became the law of the case upon the district court and court of appeals. *See In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn. 1990) (providing that under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the *same issues* in subsequent stages in the *same case*" (citation omitted) (internal quotation marks omitted)). But the district court based its subsequent decision on grounds independent from the court of appeals' reasoning under Rule 32.02. And in any event, the law of the case doctrine in no way limits our ability to address the legal issue here. *See Peterson v. BASF Corp.*, 675 N.W.2d 57, 66 (Minn. 2004) (explaining that "[t]he law of the case doctrine does not generally bar a higher court from reviewing an earlier decision of a lower court"), *vacated on other grounds*, 544 U.S. 1012 (2005); *State v. Dahlin*, 753 N.W.2d 300, 305 n.7 (Minn. 2008) ("We are not generally barred 'from reviewing an earlier decision of a lower court'" by the law-of-the-case doctrine. (quoting *BASF*, 675 N.W.2d at 66)).

But the *Lewis-Miller* framework for determining whether a petitioner is entitled to an evidentiary hearing—which appellants argue they are entitled to—does not apply to juvenile court proceedings such as this one. *See* Minn. Stat. § 257C.03, subds. 2, 7 (establishing an interested third party's requirements for an evidentiary hearing); *Lewis-Miller*, 710 N.W.2d at 569–70 (applying the section 257C.03, subdivision 7, requirements to a *family court* third-party custody petition). Because appellants' petition is properly construed as a transfer of legal and physical custody in juvenile court, we do not reach appellants' arguments that the district court erred in dismissing their third-party custody petition without an evidentiary hearing. Third-party custody petitions under Minnesota Statutes section 257C.03 are a family court remedy, but the twins' CHIPS proceeding falls under the original and exclusive jurisdiction of the juvenile court. The district court therefore did not err in denying appellants' petition without a hearing.[26]

### III.

Finally, we turn to appellants' argument that ICWA violates the equal-protection principle of the Fifth Amendment and MIFPA violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. amends. V, XIV, § 1; *Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954) (requiring, as part of due process, equal protection from the federal government). The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," U.S.

---

[26] Because we are affirming the district court's dismissal of appellants' third-party custody petition, we do not address the mother's arguments on appeal that the custody petition is invalid because it does not satisfy certain statutory notice and procedural requirements. *See* 25 U.S.C. § 1912(a); Minn. Stat. § 257C.03, subd. 3(a)(3).

Const. amend. XIV, § 1, which is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). For the reasons discussed below, this issue is no longer properly before our court, nor was it proper for the court of appeals to address the issue in its opinion.

### A.

The crux of appellants' constitutional challenge to ICWA and MIFPA is that those laws impermissibly "injure Appellants because their custody petition is treated differently" because they are not eligible for membership in a tribe whereas the twins are. Appellants assert that ICWA and MIFPA subject them to unequal treatment by requiring Minnesota courts to impose different, more burdensome processes on their custody petition solely because their race and national origin differ from the Indian children they seek to adopt. Appellants also argue that ICWA's and MIFPA's placement preferences provide less protection for the individual rights of Indian foster children than non-Indian foster children. This argument, however, is premised upon the notion that appellants have a proper custody petition before the court through either their third-party custody or permissive intervention motions. We address each avenue in turn.

Regarding the third-party custody petition, when we first granted review on the constitutionality issue, the propriety of appellants' custody petition was not before us, and the court of appeals had remanded that question to the district court. But for the reasons explained above, we have now concluded that the third-party custody petition appellants filed is non-cognizable in juvenile court, and appellants, as non-parties, are likewise ineligible to file a petition for a transfer of legal and physical custody of the kind permitted

43

in juvenile court. Moreover, the reasons why appellants are ineligible to file such a petition for custody in this juvenile court matter do not rest in any way upon ICWA or MIFPA. Given our holding that appellants have no cognizable custody petition in this juvenile court matter, there is likewise no cognizable basis for our court to address appellants' constitutional challenge to ICWA and MIFPA.

Regarding the permissive intervention motion, we need not further consider appellants' arguments because they stem from the false premise that the district court's review of appellants' permissive intervention motion considered the children's tribal eligibility. Because the child custody statutes mandate an individualized consideration of the children's needs, the district court was required to abide by that requirement regardless of whether the children or the foster parents are eligible for membership in an Indian tribe. *See* Minn. Stat. § 260C.212, subd. 1(b). Moreover, one "purpose of the laws relating to juvenile protection proceedings is . . . to preserve and strengthen the child's family ties whenever possible and in the child's best interests." Minn. Stat. § 260C.001, subd. 2(b)(3). As discussed above, our careful review of the record indicates that the district court conducted a painstaking review of whether appellants' permissive intervention was in the best interests of the children *in terms of intervention*. In conducting that review, the court did not consider appellants' tribal eligibility as a factor. Nor is there any language in Minnesota Rule of Juvenile Procedure 34.02—which governs permissive intervention— that would require the court to consider appellants' tribal eligibility status in making its intervention decision. *See* Minn. R. Juv. Pro. P. 34.02 ("Any person may be permitted to

intervene as a party if the court finds that such intervention is in the best interests of the child.").

Rather, the court appropriately considered whether appellants' intervention would provide redundant information to the court, and whether the twins' best interests were already represented by the existing parties.[27] It also found that some of appellants' interactions with the twins' mother were concerning. It did not abuse its discretion when it determined that permissive intervention was not in the twins' best interests for adjudicating the CHIPS action. Because appellants' tribal eligibility status was not a basis for the district court's decision, we do not reach the question of whether ICWA and MIFPA are constitutional. That question is not implicated by the current procedural posture of this case.

B.

We also must consider whether it was premature for the court of appeals to consider the constitutionality of MIFPA in appellants' first appeal from the district court's order denying appellants' motion to stay temporary placement with the twins' maternal relatives and the order denying appellants' motion for intervention and dismissing the third-party custody petition. *See L.K.*, 9 N.W.3d at 191–99; *id.* at 209–10 (Reyes, J., concurring in

---

[27] Nor is the question of whether ICWA and MIFPA are constitutional implicated by the denial of permissive intervention to appellants. Appellants only argue that they were injured by ICWA and MIFPA in the permissive intervention context "[t]o the extent the district court believed that for Appellants merely to challenge ICWA/MIFPA's constitutionality . . . itself . . . warrants excluding them from court." But we rejected that argument for reasons already explained and concluded that the district court's decision to deny permissive intervention was guided by the applicable law, not by appellants' decision to challenge ICWA's and MIFPA's constitutionality.

45

part and dissenting in part).[28] The court of appeals majority structured its analysis by addressing and resolving appellants' issues in the following order: First, it remanded on the motion for permissive intervention. *Id.* at 183–85. Then it remanded on the dismissal of the third-party custody petition. *Id.* at 186–88. Next, it concluded that the district court did not err by finding that there was not good cause to deviate from ICWA's and MIFPA's placement preferences for temporary out-of-home placement.[29] *Id.* at 188–91; *see* 25 U.S.C. § 1915(b); Minn. Stat. § 260.773, subd. 3. Finally, the majority considered whether MIFPA is constitutional. *L.K.*, 9 N.W.3d at 191–98.

Based on our careful review of the court of appeals' opinion, it is clear that MIFPA's constitutionality had no bearing on the court of appeals' determinations of whether the district court erred in the decisions it made during the pendency of the twins' CHIPS proceedings. Moreover, as we have explained, on remand, ICWA and MIFPA did not bear on the district court's decision to grant or deny permissive intervention. *See* Minn. R. Juv. Prot. P. 34.02.

Furthermore, as the court of appeals recognized, "[a] reviewing court must generally consider 'only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.' " *L.K.*, 9 N.W.3d at 192 (quoting *Thiele v. Stich*,

---

[28] The dissent disagreed with the court of appeals' holding that appellants had standing to challenge MIFPA and that the issue was properly before the court, but it agreed that if it were to reach the issue, MIFPA is subject to rational-basis review and is constitutional. *L.K.*, 9 N.W.3d at 205–10 (Reyes, J., concurring in part and dissenting in part).

[29] We granted review of this issue in appellants' first appeal, but, as we explained, they forfeited it at oral argument and in their briefing.

425 N.W.2d 580, 582 (Minn. 1988)). The court of appeals likewise recognized that the district court did not rule on appellants' constitutional challenges. Nevertheless, the court of appeals considered appellants' challenge properly before it based on the principle that an appellate court may decide an argument not passed on below if the argument "could be decisive of the controversy on the merits, if the facts are undisputed, and if 'there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question.'" *Id.* (quoting *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 687 (Minn. 1997)). But it clearly did not need to decide those issues in order to address the issues that were properly before it. And as the current proceedings illustrate, the constitutionality of MIFPA and ICWA was *not* decisive of the controversy.

We were faced with similar circumstances in *Pike v. Gunyou*, 491 N.W.2d 288 (Minn. 1992). In that case, we confronted a court of appeals majority that extended beyond the scope that was required to adjudicate the issues on appeal. *Id.* at 289 n.1. The court of appeals in *Pike* addressed five different issues, three of which were unnecessary for it to consider in order to determine whether a certain statute applied to the controversy at issue. *Id.* We vacated the portions of the court of appeals majority and concurrence which addressed the tangential issues, finding that the court of appeals "greatly expanded its inquiry on appeal beyond the narrow issues raised with regard to the applicability" of the statute. *Id.* Specifically, we noted that the court of appeals "consider[ed] matters unrelated to its appellate task of reviewing the exercise of the trial court's discretion." *Id.* Similarly here, we find that the court of appeals greatly expanded its scope beyond what was necessary to address the particular controversies at issue. We therefore vacate those

portions of the majority and concurring opinions of the court of appeals that addressed the constitutionality of MIFPA and ICWA, and "direct that those [portions of the] opinions shall have neither dispositional nor precedential value." *Id.* at 290.

*   *   *

In summary, Minnesota Rule of Juvenile Protection Procedure 34.02 provides the district court discretion to grant an individual's motion to permissively intervene in a CHIPS proceeding when the intervention is in the best interests of the child. Here, the district court did not abuse its discretion when it determined that appellants' intervention was not in the twins' best interests. Furthermore, appellants' third-party petition for permanent custody is non-cognizable in juvenile court and is instead properly construed in juvenile court as a petition for a transfer of legal and physical custody. But because appellants are not parties to the juvenile court case, they are foreclosed from bringing a petition to transfer the twins' placement or custody. Thirdly, because they are not parties, we do not address appellants' equal protection arguments regarding ICWA and MIFPA. And we further hold that it was inappropriate for the court of appeals to reach that issue.

Finally, on July 29, 2024, appellants filed a motion to stay the proceedings in district court while their appeal was pending. On August 19, 2024, we granted the stay in part and prohibited the district court from transferring this matter to tribal court until the stay is lifted. In light of our decision today, we lift the stay.

## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of appellants' motion for permissive intervention and its dismissal of appellants' third-party custody petition in

48

appeal No. A24-1296. We also vacate the portions of the court of appeals majority and concurrence in appeal No. A23-1762 addressing MIFPA's constitutionality and declare them to be of neither dispositional nor precedential value. We lift the stay and remand the case to the district court for further proceedings consistent with this opinion.

Affirmed in part and vacated in part.